HENRY WILLIAMS, APPELLANT, v. GEORGE W. WETMORE, APPELLEE.

1. Where there has been a dispute as to the boundary of a lot of land, resulting in a breach of the peace, and several ejectment suits which have not settled the question between them, and there are difficulties connected with the ascertainment of the boundary growing out of the manner in which the boundaries were described in the deeds made by the party from whom both claim title, and both parties agree that a court of equity is the proper forum for the settlement of the controversy, and a bill in equity is filed by one of them in the Circuit Court against the other, setting up all the facts, for the purpose of having that court determine the question, and the defendant does not object to the jurisdiction of the equity court by plea, demurrer or in any other proper manner, but consents to the jurisdiction, and answers the bill and thereby submits his defense, and a decree is rendered by the Chancellor establishing the boundary, from which the defendant appeals, and the question of the jurisdiction of equity is raised for the first time by him on appeal, the appellate court will not consider objections to the jurisdiction, where the record fails to show an entire absence of general jurisdiction over the subject matter.

2. Where the parties to a suit in equity agree before an examiner that each will pay the costs of taking the testimony of his own witnesses and the costs of the cross-examina-

tion of his adversary's witnesses, and the complainant pays his share of the costs, but the defendant fails after notice to pay his proportion, and after the time has expired for taking testimony the complainant sets the cause down for a hearing and gives the defendant notice thereof, and the Examiner files a report of the complainant's testimony, but does not file that of the defendant because of the latter's failure to pay the costs, and no steps are taken by the defendant to procure the filing of his testimony, but he simply protests at the hearing that the Chancellor should not hear the case because of the absence from the record of his testimony, and notwithstanding such protest the Chancellor proceeds with the hearing and renders a final decree, the action of the Chancellor presents no error of which the defendant can avail himself on appeal.

This case was decided by Division B.

Appeal from the Circuit Court for Duval County.

### STATEMENT.

A bill was filed in the Circuit Court of Duval county by the appellee against the appellant wherein it was alleged that one Jack Parker in his life time acquired by deed a part of fractional lot 2 in section 12, township 2 S. R. 26 east, beginning at a post at the corner of sections 12, 11, 1 and 2, T. 2, S. R. 26 E., thence along the section line south 88 degrees 15 minutes east to a post on the west line of the public road leading from Jacksonville to Panama Mill, thence along the west side of said road south 20 degrees 15 minutes east 5 chains 48 links to a post also on the west side of said road; thence west to a post standing in section line dividing sections 11 and 12, said township and range, thence along said section line north six chains and 15 links to beginning. This parcel is also described as bounded by the property of other

persons. It will be noticed that two of these lines are
described as running from post to post without giving
their lengths. The bill alleges that Parker conveyed the
eastern part of this property to Matilda Robinson, wife
of William Robinson, containing ten acres, which is de-
scribed by metes and bounds, and that the Robinsons
took possession of that part of the same lying east of an
old fence marked on a diagram as the "old fence line."
Parker also conveyed 105 feet square in the extreme
northeastern portion of the residue to the Trustees of the
M. E. Church. The trustees took possession of 105 feet
square which was bounded on the east by the "old fence
line," fenced it and built a church thereon. Parker then
sold and conveyed the western part of this tract to one
Cash, being 2 acres west of Hogan's creek which ran
through the property. The bill then alleges that Parker
constructed a fence along the north and south lines of
said tract extending westward from the said "old fence
line," and was in occupation of the land so fenced, and in
this state of the case on the 27th of October, 1885, Parker
and wife conveyed to the orator Wetmore and his heirs a
part of the residue of said tract described as beginning at
the *southeast* corner of Wm. Robinson's land, running
west 210 feet to a stake, north 395 feet, east 112 feet to a
corner of the lot owned by the Trustees of the M. E.
Church, south 105 feet, east 105 feet, south 290 feet to the
beginning, containing 1¾ acres, and then giving the boun-
daries. The bill alleges that the orator took possession
of said parcel of land extending from the "old fence line"
to a fence erected along a line indicated on the plat as
black line shaded red, east of a parcel marked thereon
Annie Eichelberger. The orator took actual possession
of this parcel and resided on it for ten years up to the

time of Parker's death and thence continuously to the present time. In. the meanwhile Jack Parker with his wife resided on a parcel west of the "Annie Eichelberger parcel." A subsequent owner of the Matilda Robinson parcel claimed that the "old fence line" was not the true line, but that the true deed line extended further west, and orator had to readjust his line to said deed line. In 1899 Parker and his wife sold and conveyed to Annie Eichelberger and her heirs a certain part of the residue of his tract lying immediately west of orator's parcel which is 30 feet east and west and 366 north and south, and described in the bill.

After making the deed to Eichelberger Parker and wife conveyed to Joseph Robinson a parcel described as beginning at the northeast corner of the piece sold Cash, running easterly 216 feet, southerly 366 feet, westerly 216 feet, northerly 366 feet to beginning, containing two acres. It will be noticed that this description was likely to produce confusion, inasmuch as Cash's western boundary was the center of Hogan's Creek. It is alleged that Joseph Robinson sold his parcel to his mother, Matilda Robinson; that his mother and father then conveyed it to him, and that he then in September, 1902, conveyed it to the defendant Henry Williams, who it is alleged is the son-in-law of Matilda, and lived on this parcel before he acquired it by deed.

The complainant alleges that he acquired two tax titles to the Eichelberger lot in 1896, one of them through W. B. Owen, who acquired it in 1896, and fenced in a part of it in 1896. A year or more subsequently to the death of Parker on the 2nd of May, 1895, the defendant Williams constructed a fence across the southern end of the Eichelberger parcel, and when complainant's wife was attempting to use the said premises as formerly defendant

Williams assaulted her, and therefor was convicted in the Criminal Court of Record of said county, and friction and trouble have existed ever since, though the orator has managed to hold possession and use said property except a small part of the extreme northern end.

In 1899 Matilda and William Robinson brought an action of ejectment against the complainant, and therein described the land sued for according to the description in the deed from Parker to Robinson. This suit was dismissed by the plainaitffs. In June or July 1900, defendant Williams constructed a fence near the north end of the Eichelberger lot extending westward from orator's fence thereby excluding orator from the use of a part of the said lot. In July, 1900, orator brought an action of ejectment against Williams for said part, a plea of not guilty was entered, but before the case could be tried the fire of May 3rd, 1901, destroyed the records and files of the court. Subsequently, on the 25th of September, 1902, defendant Williams brought an action of ejectment against the orator for land described just as the description contained in the deed from Parker to Robinson, and not being clear as to the claim of Williams filed pleas of not guilty, and not in possession, and in this way it was developed that the defendant claimed a part of the land of your orator, under said description. Thus learning the claim of Williams it is alleged that at the last term of the court on the law side thereof counsel on both sides in said ejectment suit orally agreed that the contest was such as should be decided in a court of chancery rather than in a law court, and hence no jury trial was had. The orator claims all the land of the Eichelberger lot, and alleges that the conveyance under which Williams claims does not embrace it. It is alleged that the history of this controversy, as well as its nature reveals that considera-

tion and determination in a court of Equity is essential to prevent a multiplicity of suits

The bill prays the court to take jurisdiction and locate by permanent monuments on the land itself, and by a sufficient description the exact boundary between the lands of the orator and defendant Williams, for an injunction against Williams from prosecuting his ejectment suit, from trespassing, for general relief, &c.

The foregoing contains the substance of the bill necessary to be considered. The defendant did not demur to this bill or otherwise object to the jurisdiction of the chancery court, but answered, admitting the allegations to be true, except as otherwise contradicted by the answer. It claims that Jack Parker's occupation of the parcel marked "Joseph Robinson" on the plat covered the Eichelberger parcel; that what the bill alleges about the "old fence line" and the "deed line" is futile, and that complainant was not compelled to move his line further west, because it was claimed that the "old fence line" was not the true line; that while the deed to his grantor Joseph Robinson was two days later than the deed to Eichelberger, yet that neither defendant nor said Robinson had any notice of said deed except from the record, and that they were both recorded on the same day, *viz*: September 18th, 1889.

The answer denies that Eichelberger ever took possession of the lot; and avers that complainant took nothing by his tax title; that Jack Parker remained in possession of the lot until he died in 1895, notwithstanding the deed to Eichelberger; that Wetmore did not go upon the Eichelberger lot until a year after Parker died, when he trespassed thereon by building his fences as set out in the bill. The answer sets out how defendant obtained his deed from Joseph Robinson, and that John Parker

and Joseph Robinson and defendant in succession have
held all the land from Hogan's Creek on the west to the
fence on the west side of the land of Wetmore, including
the Eichelberger tract, for more than 18 years, openly,
notoriously and exclusively.  The  answer admits  that
there was a scramble for the possession of the Eichelber-
ger lot, which led to the arrest and conviction of defen-
dant, but he alleges he was not guilty, and that his con-
viction was obtained by false testimony.  The  answer
alleges that the Eichelberger deed is a fraud, that  the
complainant has known for a number of years that defen-
dant and his grantors have held the land up to the  east
line of the Eichelberger lot, and that complainant has no
rights west of said line, and that in fact there never was
such a lot as the Eichelberger lot.  The foregoing is a
compressed statement of the material facts of the answer.

On July 4th, 1904, a replication to the answer was filed,
and by consent of the parties an examiner was appointed
to take and report the testimony.  On the 29th of July,
1904, the examiner in his report states that he gave notice
to the solicitors of the parties when the testimony was
taken, that after taking the testimony he would divide the
fees between the respective parties so  that each  party
should pay for the direct examination of  his own  wit-
nesses and the cross examination of his opponent's  wit-
nesses, and should be charged the regular per diem for the
time occupied in the examination of his witnesses, and
that this arrangement was agreed to by both sides, and
the testimony of the respective parties taken. He furth-
ermore states that upon the conclusion of the testimony
he rendered bills to the solicitors of the  several  par-
ties, in accordance with his  custom, and  the  method
above  stated,  and  that  the  complainant's  solicitor
promptly paid the bill rendered him, but that neither the

defendant nor his solicitor had paid the examiner any of the costs and expenses of taking the testimony on behalf of the defendant, though several times requested to do so. He then states that upon demand of the counsel .for the complainant, on that date, *viz*: 21st March, 1905, he submitted this report, and the testimony of the complainant.

It appears that the cause was set down for a hearing by complainant on the 24th of March, 1905, and while the cause was being argued for the complainants, the defendant's counsel filed the following objection: "Comes now the said Henry Williams defendant and respectfully protests against and objects to the hearing of said cause on the ground that the examiner or master has not filed in said case any of the testimony taken by him for defendant which consists of the depositions of defendant and several witnesses in his behalf examined and cross-examined before said officer in support of defendant's answer, with the single exception of the agreed testimony of one Robinson; said officer having refused to file defendant's witnesses testimony because he has not been paid his fees for the same."

The chancellor entered a final decree in favor of the complainants, setting the boundary line between the parties, the introductory part of which is as follows: "This cause coming on to be heard in due course upon the pleadings and the testimony as filed herein, and it appearing to the court that this cause was duly set down for hearing by the complainant, that due written notice was given by the complainant of this hearing on the 24th day of March, A. D. 1905, that at the day, hour and place of the hearing set out in said notice the parties by their counsel appeared before the court, and while the argument on the part of the complainant was being presented the de-

fendant's counsel proffered to the court the paper styled objection to the hearing, that the court is not advised as to the nature, extent, substance or effect of the testimony submitted to the examiner in behalf of the defendant, that the court is not advised as to what effort or request if any was made on the part of the defendant or his solicitor or counsel to procure the filing by the examiner of such testimony, that no motion, petition, or other proceeding or pleading has been submitted to the court to cause the examiner to file such testimony or to procure such testimony for the court's consideration, that the time for taking testimony elapsed several months before this cause was so set down for hearing by the complainant; and it further appearing to the court after taking said cause under advisement that there is equity in said bill and that the material allegations of said bill are true; it is thereupon considered, ordered, adjudged and decreed that the said objection of the defendant be and the same is hereby overruled, that the controversy as to the boundary line between the parties hereto should be settled by this court, that the complainant George W. Wetmore should have the relief prayed, that the defendant has without right or equity disputed the western boundary of the land of the complainant as located by the complainant," &c.

*Geo. U. Walker,* for Appellant.

*A. W. Cockrell & Son,* for Appellee.

HOCKER, J., *(after stating the facts.)* Two assignments of error are insisted upon here by the appellant. In substance, they are, first, that the court of equity had no jurisdiction of the subject matter of this suit; and second, that the court erred in hearing the cause without the testimony of the defendant.

As to the first, the solicitor for appellant admits that he would not have raised this question if he had had the benefit of his testimony before the Chancellor which had been taken by the examiner, but which the examiner did not report. The record shows that the defendant below and appellant here not only did not object below in any way to the jurisdiction of the court, but consented to the determination of the matters involved by the equity court. There can be no dispute as to the law that where a court has no jurisdiction whatever of the subject matter of the litigation, consent cannot confer jurisdiction, and that the question may be raised at any time. It is also true, we think, that where the jurisdiction has been consented to, that appellate courts do not feel called upon to make a rigorous and critical examination in order to discover the lack of jurisdiction. We think this is peculiarly true of that class of cases to which the case at bar belongs. An examination of the reported cases upon the jurisdiction of equity in matters of confusion of boundaries will show a varied application of that jurisdiction. In the case of Doggett v. Hart, 5 Fla. 215, this court held: "A court of equity will not entertain jurisdiction in cases of confusion of boundary upon the ground merely that the boundaries are in controversy, but will require that there should be some equity superinduced by the act of the parties, such as fraud, gross negligence or misconduct on the part of those whose duty it is to preserve and perpetuate such boundaries." The doctrine of this case was followed and applied in Pendry v. Wright, 20 Fla. 828. In the case of Boyd v. Dowie, 65 Barb. (N. Y.) 237, there is an extensive examination of the English and American authorities, and the conclusion of the court is that a "confusion of boundaries of lands exists when by

the deeds thereof, or the acts of the owners or occupants of the same, the boundaries cannot be ascertained with reasonable certainty by one party alone, or except by the judgment or opinion of men, after an examination of the deeds and the premises with a surveyor, aided perhaps by the examination of witnesses." In this case the confusion was caused by the descriptions in the deeds made by the party under whom both litigants claimed title, and the jurisdiction of equity was sustained. Under the circumstances of the case at bar we do not propose to go into a lengthy examination of authorities but refer the student to the case of Guice v. Barr, 130 Ala. 570, 30 South. Rep. 563, and the note to Stuart's Heirs v. Coalter, 15 Am. Dec. 745, and the text books on Equity Jurisprudence. In the case of Hine v. City of New Haven, 40 Conn. 478, it was held that where it was manifest that there was a want of equity jurisdiction, because there was a complete remedy at law, the court might of its own motion dismiss the bill; but where the question is in doubt, and there has been a trial on the merits, the court will not of its own motion dismiss the bill, nor will the objection first taken in the appellate court be regarded with favor. In the case of Tubb v. Fort, 58 Ala. 277, the question of the jurisdiction of the court of equity was raised for the first time in the appellate court, after having been litigated on its merits in the court below. Chief Justice BRICKELL, speaking for the court, consisting of himself and Justices STONE and MANNING, says on page 282: "The general rule of practice in courts of equity, has long been settled, that if the subject matter of the suit is not without the jurisdiction of a court of equity, and there may be circumstances under which it would be competent for the court to grant relief, the objection that there is an effectual and complete remedy at law, must

be taken by demurrer, and comes too late at the hearing. In its very nature, the objection is of that class, which ought to be taken in the earliest stage of the suit, before costs have accumulated, or by the lapse of time irreparable injury may result." In 1 Daniell's Ch. P. & Pr., (6th Am. Ed.) p. 555, the author says: "If the objection on the ground of jurisdiction is not taken in proper time either by demurrer or plea, before the defendant enters into his defense at large, the court having the *general jurisdiction* will exercise it, except in cases where no circumstances whatever can give the court jurisdiction." In the case of DeCottes v. Clarkson, 43 Fla. 1, 29 South. Rep. 442, this court held: "Where no objection is made in any manner to the jurisdiction of a court of chancery in a partition suit and the case is regularly brought to final hearing and decree on bill, answer and testimony, the appellate court will not consider objections as to jurisdiction raised for the first time on appeal, where the record fails to disclose an entire absence of jurisdiction over the subject matter." See, also, Howell v. Commercial Bank, 51 Fla. 460, 40 South. Rep. 76, and Brown v. Lake Superior Iron Co., 134 U. S. 530, 10 Sup. Ct. Rep. 604; Reynes v. Dumont. 130 U. S. 354, 9 Sup. Ct. Rep. 486; 11 Notes on U. S. Reports (Rose) 743. In the latter under the statement that "where the subject is of a class of which equity has cognizance, legal remedy cannot be urged for the first time on appeal" a large number of cases are cited. In the case at bar, the admitted facts show there was much confusion and contention between the parties as to the boundaries of the respective lots which they claimed to own. The lengths of the east and west lines of the original tract of land of Parker, from whom both parties derive their titles, are not stated.

These lines run from posts on one side to posts on the other side. It is possible that this caused the contention between the Robinsons and the complainants as to whether the "old fence line," or the "deed line" was the true line between them. Again, the west line of the lot conveyed to Cash by Parker was the center of Hogan's Creek. The lot conveyed by Parker to Joseph Robinson, which seems to be the lot claimed by the defendant Williams is described as beginning at the northeast corner of the lot sold Cash, but its westerly line does not seem to follow Hogan's Creek, though the defendant claims all the land between Hogan's Creek and the land of complainant, which covers the Eichelberger lot. After several years of contention, several ineffectual law suits, the trial and conviction of defendant for an assault on the plaintiff's wife which grew out of the contention over the boundary question, the parties having come to a more definite understanding of their mutual claims agreed that the case was one properly triable in chancery. The bill was filed as well as an answer by the defendant wherein it was practicaly agreed that the case was one of equity cognizance, and here, on appeal for the first time the question of equity jurisdiction is raised. Under these circumstances we do not feel called upon to say more than that it is not manifest that the court of equity did not have jurisdiction of the subject matter, and thus leave the jurisdiction where the parties have placed it.

We now consider the second assignment of error that the court erred in hearing the cause without the testimony of defendant. The report of the examiner shows that the parties agreed to divide the fees between them, so that each should pay for the direct examination of his own witnesses, and the cross examination of his oppo-

nent's witnesses; that complainant promptly paid his proportion of the costs and that the defendant, the appellant, did not pay his proportion though several times requested so to do. This was the situation on March 21st, 1905, about five months after the time for taking the testimony had expired, when on the demand of complaint the examiner filed his report of the complainant's testimony. The cause was set down for hearing by the complainant on March 24th, and notice thereof given the appellant, and he protests against the hearing because the examiner had not filed the defendant's testimony. The appellant took no steps whatever to procure from the court a ruling upon the examiner's action. The maxim that the law protects the vigilant, not the sleeping, it seems to us, applies to this situation. The mere protest of the appellant presented nothing upon which the chancellor could rule. The complainant's action in setting the cause down was within his rights, and as against these rights, the defendant opposes nothing which will authorize a reversal of the decree appealed from.

We find no reversible error in this record, and the decree appealed from is affirmed.

TAYLOR and PARKHILL, JJ., concur.

SHACKLEFORD, C. J., and WHITFIELD, J., concur in the opinion.

COCKRELL, J., being disqualified, took no part in this decision.