FRANK E. MALONE, *Appellant*, v. ERNEST MERES, AS RE-CEIVER OF THE SPONGE EXCHANGE BANK OF TARPON SPRINGS, FLORIDA, A CORPORATION, *Appellee*.

Division B.

Opinion Filed April 30, 1926.

Petition for Rehearing denied July 17, 1926.

712

*Wm. W. Flournoy,* for Appellant;

*McKay & Withers,* for Appellee.

714

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮

En Banc.

On petition for rehearing.

Opinion Filed July 17, 1926.

1. Before the enactment of Chapter 7839, Laws of Florida, 1919, requiring a deficiency decree to be entered when the proceeds of the sale of property subject to the lien being enforced should not be sufficient to pay the debt and costs, the power of the court to enter such decrees in foreclosure of mortgages was exercised under Rule 89 of Circuit Courts in Equity Actions. They were not entered in causes to foreclose vendor's liens.

2. A lien does not exist in favor of the seller of personal property for its purchase price after delivery.

3. When a written agreement is made between the seller of personal property and the purchaser to whom delivery is made of the thing sold and the purpose and intent of the parties as shown by the document, was to execute an instrument to secure the payment of a debt it will be deemed to be a mortgage and subject to the same restraints and forms as are prescribed in relation to mortgages.

4. A written executory contract of sale, where delivery of the possession of the chattel agreed to be sold is made to the purchaser, and under the provisions of such contract the seller has the option to forfeit and terminate the contract and retain all payments made and retake the thing agreed to be sold upon the happening of certain conditions, secures to the seller the alternative to enforce the payment of the balance of the purchase price of the thing agreed to be sold.

5. The exercise of the alternative by the seller is a renunciation of the option but not a cancellation of the contract which leaves the title to the thing agreed to be sold in

the seller; for absolute title in the seller to a thing is inconsistent with an action to recover the debt due for its purchase.

6. The purchaser under such a contract, by paying part of the purchase price of the article and taking it into his possession, acquires an equitable interest in the thing agreed to be sold which may be the subject of an agreement between the parties subjecting it to a lien for the unpaid purchase price.

7. Under a contract of sale where the chattel sold is delivered to the purchaser but the seller retains the title to it with an option to retake it upon the happening of certain conditions and forfeit all payments made upon the purchase price of it the seller may exercise the alternative of proceeding against the purchaser for the collection of the unpaid balance of the purchase price and treat the contract as a lien upon the thing sold to secure such payment, because under such a contract the purchaser consents to the encumbrance upon his equitable interest in the chattel.

8. In the absence of any statutory provision declaring an instrument given to secure the payment of money to be a mortgage, a sale of personal property on the installment plan continuing title to the thing sold in the vender until all payments are made with a condition that upon the vendee's failure to make all payments the vendor shall have the right to a surrender of the property and forfeit all payments upon the purchase price of it he may elect to consider the property as security for the payment of the balance due.

9. Equity abhors a forfeiture and a court of equity, under some circumstances, has the power to declare "retain-title-contracts" to be a mere security and protect the purchaser from unconscionable forfeiture.

Petition for rehearing denied.

*W. W. Flournoy,* for Appellant;

*McKay & Withers,* for Appellee.

WHITFIELD, P. J.—Suit was brought to enforce a lien predicated upon the following written instrument, it being alleged that complainant "does hereby elect to claim a lien upon property."

"ARTICLES OF AGREEMENT, Made this 15th day of October, in the year of our Lord one thousand nine hundred and nineteen BETWEEN the Sponge Exchange Bank, a corporation organized and existing under the laws of the State of Florida, at Tarpon Springs, Pinellas County, Florida, party of the first part, and F. E. Malone, of New York, party of the second part, WITNESSETH, That if the said party of the second part shall first make the payments and perform the convenants herein mentioned on his part to be made and performed, the said party of the first part hereby convenant and agree to convey and assume to the party of the second part, his heirs, executors, administrators or assigns in fee simple, clear of all incumbrances whatever, by a good and sufficient bill of sale, all of the furniture, fixtures and equipment belonging to the Tarpon Inn and now in the Tarpon Inn in Tarpon Springs, Florida, and the said party of the second part hereby convenants and agrees to pay to the said party of the first part the sum of Fifteen Thousand Dollars, in the manner following:

"One Thousand Dollars cash, the receipt of which is hereby acknowledged, and Three Thousand Dollars on or before March 15th, 1921, Three Thousand Dollars on or before March 15th, 1922, Three Thousand Dollars on or before March 15th, 1923, Three Thousand Dollars on or be-

fore March 15th, 1924, and Two Thousand Dollars on or before March 15th, 1925, with interest at the rate of six per centum, per annum payable annually on the whole sum remaining from time to time unpaid; and to pay all taxes, assessments or impositions that may be legally levied or imposed upon said property subsequent to the year 1918, and to keep the property insured in some company satisfactory to the party of the first part in a sum not less than $14000.00 during the term of this agreement. And in case of failure of the party of the second part to make either of the payments or any part thereof, or to perform any of the covenants on his part hereby made and entered into, this contract shall, at the option of the party of the first part, be forfeited and terminated, and the party of the second part shall forfeit all payments made by him on this contract; and such payments shall be retained by the said party of the first part in full satisfaction and liquidation of all damages by it sustained, and said party of the first part shall have the right to re-enter and take possession of the property aforesaid without being liable to any action therefor.

''The payments above set forth shall be covered by promissory notes of even date herewith, and for the time specified in the agreement above, and said notes to be payable at the Sponge Exchange Bank. The party of the second part however reserves the right to pay any or all of these notes at any time by paying the interest thereon at date of payment.

''It is Mutually agreed, by and between the parties hereto, that the time of payment shall be an essential part of this contract, and that all convenants and agreements herein contained shall extend to and be obligatory upon the heirs,

executors, administrators and assigns of the respective parties.

"In Witness Whereof, the parties to these presents have hereunto set their hands and seals the day and year first above written."

The contract was signed by both the vendor and the purchaser.

An answer filed for the defendant demanded "full and strict proof."

On September 11, 1923, the court decreed a foreclosure for the amounts due with attorney fees, and on November 19, 1923, a sale of the property was confirmed and a deficiency decree rendered.

On April 16, 1924, counsel who had not heretofore represented the defendant in the cause, made a motion "to set aside and vacate the final decree and the confirmation decree herein for that to-wit:

"(a) The final decree is void for lack of jurisdiction in the court as disclosed by the record to render such decree. "(b) The allowance in the final decree of $1000.00 as attorney's fees is beyond the jurisdiction of the court and void.

"(c) The record discloses no fact constituting a cause of action within the jurisdiction of a court of equity.

"(d) The confirmation decree is void for lack of jurisdiction in the court as disclosed by the record to render such decree."

The motion was denied May 14, 1924, and the defendant took an appeal June 9, 1924, from the order denying the motion to vacate the final decree and the confirmation decree, upon the theory that the final decree is void and that the failure to appeal from such final decree within the time allowed by law is not material.

"It is the contention of the appellant that the final de-

cree was void among other reasons for the following specific reasons:

"(1) That the bill of complaint clearly showed that the complainant had a clear, complete, adequate and specific remedy at law.

"(2) That the bill of complaint clearly showed that there was no element in the alleged cause of action to give a court of equity jurisdiction in that the cause of action alleged was one over which courts of equity never take jurisdiction—a cause of action entirely outside of equitable cognizance,—as equity jurisdiction is understood and administered in both England and America.

"(3) That even if equity had cognizance, or jurisdiction in such case the final decree as and when rendered was premature, and a nullity and void being in direct violation of Section 3135 of the Revised General Statutes, being rendered prior to any order for oral testimony before the Chancellor and prior to reducing to writing the testimony, and prior to filing the written testimony in the cause."

. The portion of Section 3135, Revised General Statutes, 1920, referred to is as follows: "Oral examinations before the court shall only be had after order to that effect made by the court upon motion by either party. The testimony shall be taken down in writing, and filed in the cause." .

As to the third point above made, counsel for appellant states that "the oral testimony was not taken and reduced to writing, nor was any filed in the cause," and contends that "the decree having been rendered upon oral testimony prematurely, before the prerequisites of the statute had been observed, before an order authorizing oral testimony had been rendered, and before the testimony had been reduced to writing, and before it had filed in the cause, was and is a mere nullity, unauthorized and void."

Section 3135 above quoted does not confer statutory

powers, as in Wiggins v. Williams, 36 Fla. 637, 18 South. Rep. 859, but merely regulates procedure by directing the method of taking and filing testimony in causes as to which the court has general jurisdiction. Statutory regulations as to service of process relate to the acquisition of jurisdiction of the parties litigant and must be observed. See Milton L. & Inv. Co. v. Our Home L. Ins. Co., 81 Fla. 227, 87 South. Rep. 636.

It is clear that if the court had jurisdiction of the defendant and of the subject-matter with authority to render a decree in the cause, a failure to comply with the statute regulating the method of taking testimony and making the record in the cause, does not render the decree void. The subject-matter of the suit was the assertion of a lien predicated upon a contract of sale of personal property that was within the jurisdiction of the court.

A judgment that is absolutely null and void—mere *brutum fulmen*—can be set aside and stricken from the record on motion at any time, and may be collaterally assailed, but the judgment that is *voidable* only, because irregular or erroneous, must be moved against *in time* by motion to vacate, or by resort to an appellate tribunal, otherwise it becomes an absolute verity, and passes beyond the control of the courts to disturb. Einstein v. Davidson, 35 Fla. 342, 17 South. Rep. 563; Torrey v. Bruner, 60 Fla. 365, 53 South. Rep. 337; Lucy v. Deas, 59 Fla. 552, 52 South. Rep. 515.

If the court has acquired jurisdiction of the subject-matter and of the parties, the judgment or decree entered is binding, even though erroneous, because of irregularity of procedure, and such judgment or decree will not be set aside, reversed, or modified, except by appropriate direct appellate procedure. Wilds v. State, 79 Fla. 575, South.

Rep. 664; Hillsborough Grocery Co. v. Ingalls, 60 Fla. 105, 53 South. Rep. 930.

Where a court has general jurisdiction of civil actions at law and also of all equity causes, and the subject-matter of a suit or action and the relief sought are within the jurisdiction of the court, whether it be a contract right in personal property or title to real estate or other civil matter, the question whether the relief sought should be by an action at law or by a suit in equity, does not ordinarily involve the *power* of the court to determine the matter, but it is rather a matter of procedure, at least where the right to a jury trial is not unlawfully denied; and if a suit in equity is brought when an action at law is the proper remedy, and the defendant, if duly served or appears, does not duly challenge the plaintiff's right to proceed in equity (Griffin, Adm'r v. Orman, 9 Fla. 22; Farrell v. Forest Inv. Co., 73 Fla. 191, 74 South. Rep. 216; Dumont v. Fry, 130 U. S. 354, 505, 9 Sup. Ct. Rep. 486), or waives the right (Rivas v. Summers, 33 Fla. 539, 15 South. Rep. 319; Williams v. Wetmore, 51 Fla. 614, text 624, 41 South. Rep. 545), and the court does not *sua sponte* raise the question and dismiss the cause (Trustees I. I. Fund of Florida v. Gleason, 39 Fla. 771, 23 South. Rep. 539; McMillan v. Wiley, 45 Fla. 487, 33 South. Rep. 993; Micou v. McDonald, 55 Fla. 776, 46 South. Rep. 291; 21 C. J. 168), 23 Wall 466; 16 How. 492) and a final decree is rendered, whether upon a decree *pro confesso* or upon a contest made, such decree if erroneous is not necessarily void; and after the time within which the complaining party might have secured a review by appeal, such party is not in general entitled to have the decree vacated upon motion on the ground that it is null and void. In such cases the court having jurisdiction of the parties and of the subject out of which the litigated right grows, and also jurisdiction to adjudicate rights

in the premises, the enforcement of such rights at law or in equity depends upon the action of the parties and the acquiescence of the court, where there is no lack of power in the court to proceed to a final adjudication in the premises according to appropriate court procedure. See McMillan v. Wiley, 45 Fla. 487, 33 South. Rep. 993; 21 C. J. 162; Hillsborough Grocery Co. v. Ingalls, 60 Fla. 105, 53 South. Rep. 930.

Courts of equity have general jurisdiction or power to enforce liens, and even though in a particular case the chancellor, having jurisdiction of the parties and the subject-matter, holds that a written instrument affords a lien when properly interpreted no lien is shown by the instrument itself or by proper allegations and permissible proofs concerning its import or intended purpose, yet a decree rendered in the cause enforcing a lien in the premises, is not void for want of jurisdiction or power to render it, though the decree may be erroneous and subject to reversal on appeal duly taken.

When a bill in equity is brought in a court of general equity and common law powers, to enforce a mortgage or other lien predicated upon a written instrument that taken alone or with the allegations of the bill, is not a mortgage, but is a conditional sale of personal property with no lien features, and the defendant appears and suffers a decree *pro confesso* to be rendered against him, or contests the merits or merely demands full and strict proof by the complainant, and a final decree is rendered to enforce a lien under the written instrument, such decree, though erroneous, is not void as for lack of jurisdiction in the court over the subject-matter or over the defendant; and if the defendant appears and does not challenge the right to proceed in equity and fails to seek relief by appropriate procedure, such as by bill of review or by appeal from the final decree

within the time allowed by law, he is not entitled thereafter to have the final decree vacated upon motion on the ground that it is void. See 21 C. J. pp. 34 and 162; 1 Pomeroy's Eq. Juris. 129, 130, 131; Miller v. Rowan, 251 Ill. 344, 96 N. E. Rep. 285; Hunt v. Hunt, 72 N. Y. 217, text 229, 28 Am. Rep. 129, text 137; Tonnele v. Wetmore, 195 N. Y. 436, 88 N. E. Rep. 1068. See also Order of United Commercial Travelers of America v. Bell, 62 Fla. 565, 56 South. Rep. 910; Torry v. Bruner, 60 Fla. 365, 53 South. Rep. 337; Lucy v. Deas, 59 Fla. 552, 52 South. Rep. 515; Day v. Hurchman, 65 Fla. 186, 61 South. Rep. 445; Howell v. Commercial Bank, 51 Fla. 460, 40 South. Rep. 76; De-Cottes v. Clarkson, 43 Fla. 1, 29 South. Rep. 442; Lee v. Patten, 34 Fla. 149, 15 South. Rep. 775; 12 Ency. Pl. & Pr. 187, 196; 21 C. J. 166; People ex rel. Gaynor v. McKane, 28 N. Y. S. 981; Williams v. Wetmore, 51 Fla. 614, text 624, 41 South. Rep. 545; Venner v. Great Northern Ry. Co. 153 Fed. Rep. 408, text 413 et seq.; Hill v. St. Louis & N. E. R. Co., 243 Ill. 344, 90 N. E. Rep. 676; Hatcher v. Hendrie & Boltholl Mfg. & Supply Co., 133 Fed. Rep. 267, 68 C. C. A. 19; 23 Cyc. 1074, 1094; Johnson v. McKinnon, 54 Fla. 221, 34 South. Rep. 23; Rushing v. Thompson's Exr., 20 Fla. 583; 23 Cyc. 1055, 1074, 1094; Lee v. Patten, 34 Fla. 149, 15 South. Rep. 775; 34 C. J. 552, 560; 12 Ency. Pl. & Pr. 119, 193, Griffin v. Orman, 9 Fla. 22; 21 C. J. 162; Tubb v. Fort, 58 Ala. 227.

Where the court had not acquired jurisdiction of the defendant, the decree is void. Ex parte Nightingale, 12 Fla. 272; Zehnbar v. Spillman, 25 Fla. 591, 6 South. Rep. 214; Shaw v. Gregoire, 41 Mo. 407. See L. R. A. 1918B 511.

The equitable cognizance asserted was duly challenged or an appeal was taken in Freeman v. Timanus, 12 Fla. 393; Cavedo v. Billings, 16 Fla. 261; Finnegan v. City of

Fernandina, 18 Fla. 127; Griffin v. Orman, 9 Fla. 22; McKeown v. Coogler, 18 Fla. 866; Haynes v. McGehee, 17 Fla. 159; H. W. Metcalf Co. v. Martin, 54 Fla. 531, 45 South. Rep. 463; Simmons v. Williford, 60 Fla. 359, 53 South. Rep. 452; McKinnon v. Johnson, 54 Fla. 538, 45 So. Rep. 451; Johnson v. McKinnon, 45 Fla. 388, 34 South. Rep. 272; Smith v. Powell, 80 Fla. 166, 85 South. Rep. 654; McMillan v. Wiley, 45 Fla. 487, 33 South. Rep. 993; Betts Co. v. South Georgia R. Co., 69 Fla. 46, 67 South. Rep. 861; Trustees I. I. Fund of Florida v. Gleason, 39 Fla. 771, 23 South. Rep. 539, and other like cases. In Johnson v. McKinnon, 54 Fla. 221, 45 South. Rep. 23, there was no authority to render a deficiency decree. See also Fithian v. Monks, 43 Mo. 502; Simonson v. Blake, 20 How. Pr. (N. Y.) 484. See now Chap. 7839, Acts of 1919.

"All liens of any kind, whether created by a statute or the common law, and whether heretofore regarded as merely possessory or not, may be enforced by proceedings in chancery. Sec. 3228, Rev. Gen. Stats. 1920.

Where a court has jurisdiction, it has a right to decide every question which occurs in the cause; and whether its decision be correct or otherwise, its judgment, until reversed, is regarded as binding in every other court. But if it act without authority, its judgments and orders are regarded as nullities. They are not voidable, but simply void. Elliott v. Pierson, 1 Peters, (U. S.) 328, text 340.

In many cases, the question of *jurisdiction* is considered as distinct from that of power. We often find the *jurisdiction* denied, where the *power* exists, but ought not to be exercised, and in this sense is the word *jurisdiction* usually used, when applied to courts of chancery. Where there is a want of power, the decree is void collaterally, but where there is said to be a want of jurisdiction merely, it is only meant that it would be erroneous to exercise the power, and the decree would be reversed on appeal. It means a

want of equity, and not a want of power. In commenting on this distinction the Court of Appeals of New York, in *Banks v. Duckenfield,* 18 N. Y. R. 502, said, "There are, I apprehend, few cases in which that position (that the decree is void for want of power) could be affirmed, in respect to a court possessing general jurisdiction in law and equity on grounds relating to the subject-matter of the controversy." Curtiss v. Brown, 29 Ill. 201, text 231.

"Jurisdiction," in the strict meaning of the term, as applied to judicial officers and tribunals, means no more than the power lawfully existing to hear and determine a cause. It is the power lawfully conferred to deal with the general subject involved in the action. Bouv. Law Dict.; And. Law Dict. It does not depend upon the ultimate existence of a good cause of action in the plaintiff, in the particular case before the court. "It is the power to adjudge concerning the general question involved, and is not dependent upon the state of facts which may appear in a particular case." Hunt v. Hunt, 72 N. Y. 217. "Jurisdiction does not relate to the right of the parties, as between each other, but to the power of the court. The question of its existence is an abstract inquiry, not involving the existence of an equity to be enforced nor the right of the plaintiff to avail himself of it, if it exists. It precedes those questions, and a decision upholding the jurisdiction of the court is entirely consistent with a denial of any equity in the plaintiff, or in any one else.' People v. Sturtevant, 9 N. Y. 263." People *ex rel. Gaynor v. McKane,* 28 N. Y. S. 981, text 982.

There is a clear distinction between the term "jurisdiction," in its strict meaning, and as generally used in equity jurisprudence. In its strict meaning, as I have stated, it imports only the power residing in a court to hear and determine an action. But, as applied to the power of a

court of equity, it is ordinarily used with more limited sig-
nification and imports, not the power to hear and decide,
but the cases or occasions when the power will be exercised.
This distinction, while clearly pointed out in the best works
on equity jurisprudence, has not always been observed in
judicial opinions; and the expression "jurisdiction" has
been used when the writers want only to inquire whether
the facts before the court presented a case for the proper
exercise of the power of a court of equity. Mr. Pomeroy
has very clearly pointed out the distinction here referred
to. 1 Pom. Eq. Jur. 129-131. The term "equity jurisdic-
tion," he says, "is used in contradistinction to 'jurisdic-
tion' in general, and to 'common-law jurisdiction' in par-
tcular. * * * . 'Equity jurisdiction,' in its ordinary
acceptation, as distinguished from the general power to
decide matters at all, and from the 'common-law jurisdic-
tion,' is the power to hear certain kinds and classes of
causes, according to the principles of the method and pro-
cedure adopted by the courts of chancery, and to decide
them in accordance with the rules of equity jurisprudence.
* * * If a court clothed with the equity jurisdiction,
as thus described, should hear and decide, according to
equitable methods, a case which did not fall within the
scope of equitable jurisprudence, such judgment, however
erroneous it might be, and liable to reversal, would not
necessarily be null and void. * * * Equity jurisdic-
tion may exist over a case, although it is one in which the
doctrine of equity jurisprudence forbids any relief to be
given, or any right to be maintained. This conclusion is
very plain, and even commonplace. Yet equity jurisdiction
is constantly confounded with the right of plaintiff to main-
tain his suit, and obtain his equitable relief; thus, in fact,
making the power to decide whether equitable relief should
be granted depend upon the actual granting of such re-
lief." People ex rel. Gaynor v. McKane, supra, p. 985.

"Jurisdiction of the subject-matter of an action is a power to adjudge concerning the general question involved therein, and is not dependent upon the state of facts which may appear in a particular case, or the ultimate existence of a good cause of action in the plaintiff therein.

"A judgment rendered by a court having power lawfully conferred to deal with the general subject involved in the action, and having jurisdiction of the parties, although against the facts or without facts to sustain it, is not void as rendered without jurisdiction, and cannot be questioned collaterally." Hunt v. Hunt, 72 N. Y. 217. "Jurisdiction of the subject-matter does not depend upon the ultimate existence of a good cause of action in the plaintiff in the particular case. (See Gorenvelt v. Burwell, 1 Ld. Raym., 466, 467.) * * * Jurisdiction of the subject-matter, is power to adjudge concerning the general question involved, and is not dependent upon the state of facts which may appear in a particular case, arising, or which is claimed to have arisen, under that general question. One court has jurisdiction in criminal cases; another in civil cases; each in its sphere has jurisdiction over the subject-matter. Yet the facts, the acts of the party proceeded against, may be the same in a civil case as in a criminal case—as, for instance, in a civil action for false and fraudulent representations and deceit, and in a criminal action for obtaining property by false pretenses. We should not say that the court of civil powers had jurisdiction of the criminal action, nor *vice versa,* though each had power to pass upon allegations of the same facts. So that there is a more general meaning to the phrase "subject-matter," in this connection, than power to act upon a particular state of facts. It is the power to act upon the general, and so to speak, the abstract question, and to determine and adjudge whether the particular facts presented

call for the exercise of the abstract power.'' Hunt v. Hunt, *supra,* pp. 229, 230.

''Jurisdiction does not relate to the right of parties, as between each other, but to the power of the court. The question of its existence is an abstract inquiry, not involving the existence of an equity to be enforced, nor the right of the plaintiff to avail himself of it if it exists. It precedes these questions, and a decision upholding the jurisdiction of the court is entirely consistent with a denial of any equity, either in the plaintiff or in any one else.'' People *ex rel.* Davis v. Sturtevant, 9 N. Y. 263, text 269.

''Jurisdiction of the subject-matter is the power to adjudge concerning the general question which is involved, and if a bill in chancery states a case belonging to a general class over which the authority of the court extends, jurisdiction attaches, and the judgment, however erroneous, is not void, but is binding upon the parties until reversed or annulled in a direct proceeding and is not open to collateral attack.

''Want of jurisdiction of the subject-matter is to be distinguished from an erroneous exercise of jurisdiction, as in the former case the want of jurisdiction renders the judgment void and open to collateral attack, whereas an erroneous exercise of jurisdiction merely renders the judgment open to reversal on appeal or writ of error.'' Miller v. Rowan, 251 Ill. 344, 96 N. E. Rep. 285, 15 C. J. 729.

''The term 'jurisdiction' had a peculiar and somewhat technical use in its application to courts of general equitable jurisdiction. It related not to the naked question of power, but rather to the fact that such power had or had not been usually exercised. Thus, the question presented to a court of equity by the objection that the complaining party had a full, edequate, and complete remedy at the common law, related to the jurisdiction of

the court of equity, and is constantly spoken of in the cases in that way. But so far was it from presenting the question of mere power, that if the objection was neither taken by demurrer, plea nor answer, the court proceeded and gave judgment on the merits, notwithstanding it would have rejected the jurisdiction had the question been raised at the right time. This points to the true line of distinction in the use of the term 'jurisdiction.' The question is properly one of jurisdiction, only when a judgment asserting the power of the court would be void and assailable collaterally, in every other court. There are, I apprehend, very few cases in which that position could be affirmed in respect to a court possessing general jurisdiction in law and equity, on grounds relating to the subject-matter of a controversy. If the Court of Chancery had originally decided the cases cited the other way, no court would collaterally have examined the correctness of the decree. They might in that case, and we may assume would, have reversed on appeal, but the reversal would have proceeded on the ground that they were erroneous judgments—not void judgments—and would not have denied the authority of the court to make a decree, but would have asserted a want of equity in the case of the complainant.'' Bangs v. Duckingfield, 18 N. Y. 592, text 595, 596.

''Technically, jurisdiction is the power to hear and determine the subject-matter in controversy between the parties to a suit, and jurisdiction as thus defined does not mean simply jurisdiction of a particular case but jurisdiction of the class of cases to which the particular case belongs. It is common, however, to speak of jurisdiction in equity or the jurisdiction of a court of equity as not relating to the power of the court to hear and determine a cause, but as relating to whether it ought to assume the jurisdiction and hear and decide the cause. This distinc-

tion is important and should not be lost sight of." 21 C. J. p. 34.

Jurisdiction of a court of equity does not depend upon the sufficiency of the bill, and if the court has jurisdiction of the parties and of the subject-matter, the fact that the cause of action is defectively stated does not oust the court of jurisdiction.

"Jurisdiction of the subject-matter does not mean jurisdiction of the particular case but of the class of cases to which the particular case belongs, and does not depend upon the sufficiency of the pleadings nor the rightfulness of the decision." O'Brien v. People ex rel. Kellogg Switchboard and Supply Co., 216 Ill. 354; People v. Kizer, 151 Ill. App. 6; International Paper Co. v. Bellows Falls Canal Co., 91 Vt. 350, 100 Atl. Rep. 684; Wadhams Oil Co. v. Tracy, 141 Wis. 150, 123 N. W. Rep. 785.

"If the defect of jurisdiction springs from want of power the result is void; if from inexcusable departure from established principles governing the exercise of judicial power, it is erroneous and may and ought to be set aside upon appeal regardless of the attitude of counsel in respect thereto upon either side.

"Want of judicial power as to a particular subject of action renders relief granted to the plaintiff open to challenge, directly or indirectly, as void. Abuse of power in the sense of inexcusable departure from established principles in the exercise of judicial authority, leaves the result binding upon the parties interested till set aside in some appropriate judicial proceeding. Harrigan v. Gilchrist, 121 Wis. 127, text 132, 99 N. W. Rep. 909.

"A court which is competent by its constitution to decide on its own jurisdiction, and to exercise it to a final judgment, without setting forth in its proceedings the facts and evidence on which it is rendered, whose record is ab-

·solute verity not to be impugned by averment or proof to the contrary, is of the description of courts whose judgments are conclusive if not removed to an appellate court. There can be no judicial inspection behind the judgment, save by appellate power.'' Sessions v. Stevens, 1 Fla. 233, text 241.

''To authorize the assertion that a judgment is void it must have emanated from a court of limited jurisdiction ·not acting within its legitimate prerogative or from a court of general jurisdiction where the parties are not actually or by legal construction before the court and subject to its jurisdiction.

''Judgments of courts of general jurisdiction are not considered under any circumstances as mere nullities,. but as records importing absolute varity, and of binding efficacy until reversed by a competent appellate tribunal. They are voidable, not void,'' Ponder v. Moseley, 2 Fla. 207, 48 Am. Dec. 194; and other cases cited in 17 Am. & Eng. Ency. L., (2nd ed.) 1042.

''There is a distinction between those facts which involve the jurisdiction of the court over the parties and subject-matter and those quasi-jurisdictional facts, without allegation of which the court cannot properly proceed, and without proof of which decree should not be made; absence of the former renders the judgment void and assailable collaterally, but not so as to the latter.'' 23 CYC, p. 1074.

''It is a well settled rule that jurisdiction being obtained over the person and the subject matter, no error in its exercise can make the judgment void. The authority to decide being shown, it cannot be divested by being improperly or incorrectly employed.'' Freeman on Judg., 135, and notes. See Stephenson v. Kutley U. S.—, decided Nov. 16, 1925; Day v. Hurchman 65 Fla. 186.

"Jurisdiction of the subject-matter is the power lawfully conferred to deal with the general subject involved in the action." Hunt v. Hunt, 72 N. Y. 217, 28 Am. Rep. 129; 1 Pomeroy's Eq. Jur. (4th ed.) 129, p. 155 Note.

"Jurisdiction of the subject-matter is the power to hear and determine cases of the general class to which the proceedings in question belong; the power to deal with the general subject involved in the action; and, as used in the constitutions and statutes, the word 'jurisdiction' means jurisdiction as to the subject matter only, unless an exception arises by reason of its employment in a broader sense. Such jurisdiction the court acquires by the act of its creation, and possesses inherently by its constitution; and it is not dependent upon the sufficiency of the bill of complaint, the validity of the demand set forth in the complaint, or plaintiff's right to the relief demanded, the regularity of the proceedings, or the correctness of the decision rendered. 15 C. J. pp. 734, 735; O'Brien v. Peo., 216 Ill. 354, 75 N. E. Rep. 108, 108 Am. St. Rep. 219, 3 Ann. Cas. 966; State v. Smith, 21 R. I. 513, 72 A. 710;" Cooper v. Reynolds, 10 Wall. (U. S.) 308; Hope v. Blair, 105 Mo. 85, 16 S. W. Rep. 595; Dow v. Johnson, 100 U. S. 158.

"Jurisdiction of the subject matter is the power to deal with the general abstract question, to hear the particular facts in any case relating to this question, and to determine whether or not they are sufficient to invoke the exercise of that power. It is not confined to cases in which the particular facts constitute a good cause of action, but it includes every issue within the scope of the general power vested in the court by the law of its organization to deal with the abstract question. Foltz v. St. Louis, etc. R. Co., 60 Fed. 316, 8 CCA 635." 15 C. J. p. 735, Note 94a. Brown

on Jurisdiction (2nd ed.) 3; Hope v. Blair, 105 Mo. 85, 16 S. W. Rep. 595, 24 Am. St. Rep. 366.

"The test of jurisdiction is whether the tribunal had the power to enter on the inquiry, and not whether its methods were regular, its findings right, or its conclusions in accordance with law." 15 C. J. pp. 735, Note 2 a., Radil v. Sawyer, 85 Neb. 235, 122 N. W. 980.

"Equity jurisdiction," in its ordinary acceptation, as distinguished on the one side from the general power to decide matters at all, and on the other from the jurisdiction "at law" or "common-law jurisdiction," is the power to hear certain kinds and classes of civil causes according to the *principles* of the method and procedure adopted by the court of chancery, and to decide them in accordance with the doctrines and rules of equity jurisprudence, which decision may involve either the determination of the equitable rights, estates, and interests of the parties of such causes, or the granting of equitable remedies. In order that a cause may come within the scope of the equity jurisdiction, one of two alternatives is essential; either the primary right, estate, or interest to be maintained, or the violation of which furnishes the cause of action, must be equitable rather than legal; or the remedy granted must be in its nature purely equitable, or if it be a remedy which *may* also be given by a court of law, it must be one which, under the facts and circumstances of the case, can only be made complete and adequate through the equitable modes of procedure. At the same time, if a court clothed with the equity jurisdiction as thus described should hear and decide, according to equitable methods, a case which did not fall within the scope of the equity jurisprudence, because both the primary right invaded constituting the cause of action and the remedy granted were wholly legal, and belonging properly to the domain of the law courts, such

judgment, however erroneous it might be and liable to reversal, would not *necessarily* be null and void. On the contrary, the objection that the case does not come within this so-called equity jurisdiction must ordinarily be definitely raised by the defendant at the commencement of the proceedings, or else it will be regarded as waived, and the judgment will not even be erroneous. In some instances, however, where the equitable functions of the court are specifically defined by statute, or the facts show very clearly that the rights involved in the controversy and the remedies demanded are purely legal, and completely within the scope of ordinary legal proceedings, the court of equity will itself take the objection at any stage of the cause, and will dismiss the suit, although no objection has in any way been raised by the parties.

If the *court* has jurisdiction over the subject-matter of equitable rights, interests, and remedies, its jurisdiction does not depend upon its deciding *correctly* as to the existence of such rights, or as to the granting of such remedies. The jurisdiction itself exists independently of the particular case over which it is exercised; jurisdiction, in its most general and accurate sense of a power to decide concerning certain subject-matter, involves the power to decide wrongly as well as correctly.'' 1 Pom. Eq. Jur. (4th ed.) 130 and note, 3; Hunt v. Hunt, 72 N. Y. 217; People v. Ny. Sam Chung, 94 Cal. 304, 29 Pac. Rep. 642, 28 Am. St. Rep. 129.

''As distinguished from objections to jurisdiction involving the constitution of courts, the necessity of the presence of the person or the res within the territorial limits of the court's power, and process and service, and aside from certain more or less arbitrary limitations and restrictions, an objection to the jurisdiction of equity resolves itself into an assertion of the existence of an adequate

remedy in the courts of law or in other duly constituted tribunals other than courts of equity. By reason of the fact that equity jurisdiction had its origin in the inadequacy of legal remedies, this objection is usually spoken of as jurisdictional. And in a sense this terminology is correct, as the objection negatives the very foundation of the right to equitable relief, and goes not only to the lack of some element essential to relief under some established head of equity, but may amount to an assertion that the subject matter is entirely without the established field of equity jurisprudence, and may involve an insistence upon the fundamental right of trial by jury. But nevertheless it goes to the propriety of acting rather than to the power to act. And thus, in its final analysis, it may be said to invoke merely a rule of convenience, whereby a court of equity may prevent matters purely cognizable at law from being drawn into chancery at the will of the parties, and hold them to a waiver in the absence of proper and timely objection, but at the same time may reserve to itself a judicial discretion to deny relief even in the absence of such objection.''

''The objection that the plaintiff has an adequate remedy at law is no more than a rule of practice in the court of chancery, upon which the action will be dismissed if the attention of the court is called to it at the proper time and in the proper manner; and although it is most frequently spoken of by courts and writers as a question of jurisdiction it is strictly inaccurate to call it so. There is no want of jurisdiction, and should the court erroneously proceed, after objection properly taken, according to its own rule, it is very clear that the judgment would not be void. It might be erroneous, and subject to reversal in a direct proceeding, but it could not be collaterally impeached or

disregarded.'' Peck v. Beloit School Dist. No. 4, supra, 21 C. J. p. 162, and note 30.

The absence of precedents, or novelty of incident, present no obstacle to the exercise of the jurisdiction of a court of equity. 21 C. J. 35. But, if needed, apparent, if not real, precedents are found in Aycock Bros. Lumber Co. v. First Nat. Bank of Dothan, 54 Fla. 604, 45 South. Rep. 501; Varn v. Ashbrook, 84 Fla. 626, 94 South. Rep. 384; Howell v. Commercial Bank, 51 Fla. 460, 40 South. Rep. 76. 11 C. J. 413; Ballinger v. West Pub. Co., 44 App. Cas. (D. C.) 49; 136 U. S. 268; 17 A. L. R. 1421 Notes.

The statement in Section 10, page 9, Story Equity Pleading, that ''the bill must state a case within the appropriate jurisdiction of a court of equity;'' that ''consent cannot confer a jurisdiction not vested by law'' and that ''the court itself cannot act except upon its own intrinsic authority in matters of jurisdiction; and every excess will amount to usurpation, which will make its decretal orders a nullity, or infect them with ruinous infirmity,'' refers to Section 473 note (a) which deals with objections to equitable cognizance by the parties or by the court *sua sponte,* and states that ''an adequate legal remedy, excluding the jurisdiction of equity, exists, e. g., in the following forms of proceedings in an action of assumpsit or tort (citing cases); in ejectment (citing cases); in replevin (citing cases); by writ of entry (citing cases); by *quo warranto* (citing cases); by mandamus (citing cases);'' &c., which clearly indicates that the statements of the text have no reference to a case stated in the form of a bill in chancery predicated upon a contract for the sale of property in which the complainant asserts an equitable right and prays for an equitable remedy as in this case. In the cases cited or referred to above the decrees were not held to be void, but

as the right to proceed in equity was duly challenged, equity cognizance was withheld.

This proceeding is in form a bill in chancery to enforce a lien. The subject matter is a contract for the sale of personal property with mutual or correlative agreements signed by the vendor and by the purchaser. The property is within the jurisdiction of the court. The complainant sets up the contract, its breach and an election to take a lien and prays that the asserted lien be enforced. The defendant, an adult man, appeared, and by answer merely demanded ''full and strict proof'' of the allegations of the bill of complaint and made no defense. This was a voluntary submission to the jurisdiction of the court and a waiver of any and all objections, if any, to the form of the proceeding, to the sufficiency of the pleading and to the authority of the court to proceed to a determination of the equitable rights and remedies set up in the bill of complaint. See Rivas v. Summers, 33 Fla. 539, 15 South. Rep. 319.

The Circuit Court having general equity as well as common law powers, had authority to adjudicate an equitable right or a lien in property and to afford an equitable remedy; and having jurisdicton of the parties and of the property, if error be committed in declaring an equitable right or a lien or in giving an equitable remedy, the decree, though erroneous, is not void. The record does not show a lack of jurisdiction. Finley v. Chamberlin, 46 Fla. 581, 35 South. Rep. 1.

The bill of complaint alleges the execution of the contract for the sale of the personal property, the complainant's right in the premises and the failure to pay the purchase price as agreed, and alleges that defendant has had possession and use of the personal property for nearly four years; that it has been damaged and depreciated by use, wear and tear, and complainant would not be adequately

indemnified for the breaches of defendant by re-taking the property and that the complainant ''does hereby elect to claim a lien upon the said personal property for the balance of the purchase price due and payable.'' The allega-. tions of the bill of complaint at least raise a question of an equitable right or an equitable remedy; and an erroneous decision thereon does not affect the power or jurisdiction of the court to proceed in the cause the defendant having appeared therein.

There is no contention that the constructive service of process upon the defendant was not duly made or that the defendant did not appear and answer by counsel in the cause, and ''pray that said complainants be required to make full and strict proof of each and every allegation contained in said bill of complaint.''

When a bill in chancery is brought in a court of general equity and common law powers to enforce a lien claimed under a contract for the sale of personal property that is within the jurisdiction of the court, the allegations of the bill of complaint do not determine the power of the court to adjudicate a controversy in the premises, though the allegations may enable the court, by the application of controlling provisions or principles of law, to determine upon proper challenge or *sua sponte* whether the remedy sought should be in an equity or a law forum; consequently the judicial power of the court to adjudicate the controversy is not dependent upon the sufficiency of the allegations of the bill of complaint to show a right to proceed in equity or to equitable relief as to the right or remedies demanded; and if the court has jurisdiction of the property involved and of the parties with power to decree or to enforce a lien in cases of that nature, the court may adjudicate the matter according to equity procedure and its decree will not be void even if it be erroneous; and this is true whether

the final decree is rendered upon decree *pro confesso* or upon contest made and whether the right to proceed in equity is challenged or not, and whether the challenge is sustained or not; and if the decree rendered is not reversed on appeal or superseded on bill of review or upon other proceedings duly taken within the time required by law, it is binding upon the parties and is not amenable to a motion to vacate on the ground that the decree is void for lack of jurisdiction.

In this case the court of general equity powers had jurisdiction of the personal property the subject-matter of the contract of sale that was sought to be enforced as a lien upon the property. The defendant appeared generally in the cause and merely demanded "full and strict proof." The court had power to decree an equitable lien or to enforce a contract lien upon the property; and even if the decree rendered be erroneous because the facts shown did not give a right to an equitable or to a statutory lien and the instrument did not give a contract lien, or because of material irregularities in the procedure had in the cause, the jurisdiction of the court is not thereby affected, and the decree rendered is not void, even if it be erroneous and could have been reversed on appeal. The power to render a decree in equity includes power to make an erroneous decree as well as a correct decree, the party aggrieved by an erroneous decree having remedy by appeal or by bill of review. Judicial power to adjudicate is not affected by an erroneous adjudication. The power to adjudicate is conferred by law. Error in the exercise of power conferred by law does not affect the law conferring the power to adjudicate. Failure to have a merely erroneous decree reversed by due course of law does not render the decree void. If a decree is not void when rendered it does not become void because it was not corrected by appeal; and it may be enforced though it is erroneous and might have been reversed by

proceedings duly taken by the aggrieved party. See Tonnele v. Wetmore, 195 N. Y. 436, 88 N. E. Rep. 1068; Einstein v. Davidson, 35 Fla. 342, 17 South. Rep. 563; 15 R. C. L. 864; 34 C. J. 511.

Whether the provisions of the instrument in this case tend to show a conditional sale with a stipulated remedy for a breach, rather than a right to a lien, need not be discussed here.

The appeal in this case is not from the final decree, but from an order denying a motion to vacate the final decree on the ground that it is void. The final decree adjudicating that the instrument affords a lien is not *void* and is therefore binding on the parties, because the court had jurisdiction of the parties and of the subject-matter with power to render a decree in the premises, and the decree rendered was not appealed from within the time allowed by law. Even if erroneous, the decree rendered was within the judicial power of the court; and the error therein, if any, was not remedied by appeal or bill or review.

As the instrument was *adjudged* to afford a lien, the deficiency decree was an incident in the proceeding under Chapter 7839, Acts of 1919, which statute does not clearly appear to be invalid, its provisions being matter properly connected with the subject expressed in the title of the act; and even if for any reason that portion of the final decree is erroneous, it is not void, a deficiency decree *being authorized* and within the power of the chancellor. The contract of sale herein was dated October 15th, 1919, and Chapter 7839 became effective June 7, 1919.

In view of the stipulation as to liquidated damages and the other provisions of the contract, and of the purchase of the property for a relatively small sum by the complainant at the judicial sale the amount of the deficiency decree appears to be inequitable, but that does not render the decree void.

The vendee defendant contracted in the purchase money notes "to pay all costs of collection, including a reasonable attorney's fee." He did not contest the amount of the attorney fee allowed by the court and the decree states that the court "heard evidence as to the amount of a reasonable attorney's fee to be allowed to complainant's solicitors." Irregularity of error, if any, in the ascertainment and award of the attorney fees does not render the decree void so as to make it subject to a motion to vacate.

It cannot be said that the chancellor was without power to adjudicate a lien or to adjudge the instrument in this case to be a lien; or that the chancellor had no authority to render a deficiency decree or to adjudicate an attorney fee in the premises. Errors, if any, in the proceedings do not render the decree void. This is a hard case, but no authority or principle has been adduced showing the decree to be void. Lucy v. Deas, 59 Fla. 552, 52 South. Rep. 515.

The order denying the motion "to set aside and vacate the final decree and the confirmation decree" on the ground that each of such decrees is void, is affirmed.

TERRELL AND BUFORD, J. J., concur.

ELLIS AND STRUM, J. J., concur in the opinion.

BROWN, C. J., dissents.

BROWN, C. J., dissenting.—The contract set forth in the bill was not an absolute sale, but an agreement to sell if certain conditions were complied with, such as the making of certain payments, etc., and was in effect a conditional sale. The seller agreed to make a bill of sale to the buyer upon the completion of certain payments therein described, and, if the buyer defaulted in any payment, the contract should, at the option of the seller, be forfeited and termi-

nated and all payments made by the buyer should be forfeited to the seller and retained by it in full satisfaction and liquidation of all damages by it sustained, and the seller should have the right to repossess the property. There was no attempt to reserve a lien of any sort, if such were in fact possible under the circumstances. The buyer defaulted in his payments and the title never passed out of the seller.

This left the seller two remedies, and only two, and both purely legal. It could treat the sale as absolute and sue the buyer for the balance due on the debt, or it could treat the contract as forfeited and canceled, and recover the property by replevin. But the seller could not pursue both courses. To pursue either remedy would operate as an abandonment or waiver of the other, the remedies being inconsistent. It could never be the intention of the law to permit the seller to take back the property and at the same time force the buyer to pay for it, or at least the balance due. The seller cannot collect the price and keep the property, too. There is an excellent statement of the law on this subject in the able opinion of MR. JUSTICE WHITFIELD in the case of American Process Co. v. Florida White Pressed Brick Co., 56 Fla. 116; see also 24 R. C. L. 482, and Mizell Live Stock Co. v. McCaskill, 59 Fla. 322, 51 So. 547; Campbell Printng Press Co. v. Walker, 22 Fla. 412.

Instead of pursuing either of these remedies, the receiver of the seller, the Bank, went into a court of equity, and "elected to claim a lien" upon the property, had the property sold to satisfy the lien, bought it in for one-third of what it had been originally sold for, and obtained a deficiency decree against the buyer for nearly $10,000.00 Thus the buyer lost the property and the $2000.00 already paid by him, and was burdened with a money decree for nearly $10,000.00, although his contract contemplated that if pos-

sesson of the property was taken from him, the money already paid by him should be retained in full satisfaction of the debt.

This action concerned personal property. There is no vendor's lien for unpaid purchase money on personal property, such as there is on real estate. 29 Am. & Eng. Encyc. of Law, 733; 35 Cyc. 653; McKinnon v. Johnson, 54 Fla. 538, 45 So. 451. If the seller of personal property desires a lien, he should take a chattel mortgage; if he sells on conditional sale contract, retaining the title, he can have no lien, for he can have no lien upon his own property—the lien would be merged in the title.

This is not a case where there is any claim that the arrangement between the parties was such as that equity would impose the qualities of a mortgage upon the transaction; nor would the facts set forth in the bill justify any such.

Of course, a vendor's lien implied by law for unpaid purchase money on real estate which the vendor has conveyed may be foreclosed in equity. And this doctrine has been extended to cases where the vendor of lands has retained the legal title, for in such cases the vendee is treated as the real beneficial owner and the vendor is deemed to hold the legal title as trustee, and as security for the payment of the purchase money. He has a lien upon the vendee's equitable estate as security for the payment of the purchase money, which he may foreclose in equity, the vendee being decreed to pay the amount due on the price within a limited time, or in default of such payment his equitable estate will be foreclosed and sold to pay the purchase price.

But this doctrine is not applicable to personal property. Where personal property is sold, the general rule has long obtained that there is no lien implied by law, or in equity, to secure the payment of the purchase money. The seller

may obtain a lien, if desired, by taking a chattel mortgage, or he can retain the title until the price is paid, and if possession is delivered to the buyer, he can protect himself by evidencing such conditional sale by written contract.

I am therefore inclined to the opinion that the facts set up in the bill, in spite of the allegations claiming a lien, showed that the complainant had no lien of any sort whatsoever, either at law or in equity; that his only remedies were purely legal remedies, and that his allegation of a lien was palpably nothing but a bald and unsupported conclusion of the pleader.

I am aware that these views are in apparent conflict with the case of Varn *et al.* v. Ashbrook, 84 Fla. 626, 94 So. 384, but a careful reading of that case shows that the decision was based upon the premise that the so-called conditional sale was on the facts shown, in reality a mortgage, and such being the case, the seller could so treat it, and proceed for foreclosure. What the facts were, which showed the transaction to be a mortgage, are not set out. This case is not to be construed as holding that in any case, a seller (and certainly not the receiver of the seller) in a conditional sale contract may on default arbitrarily elect to treat such contract as a mortgage and bring suit in equity to foreclose the mortgage lien. If this option were accorded to the seller, it would also have to be accorded to the buyer. To so hold, would indeed be an innovation.

It is true that there seems to have been a recent tendency on the part of some of the appellate courts in other jurisdictions to extend the principles governing conditional sales of land or executory contracts for the sale of land, and the relations between the vendor and the vendee in such transactions, to similar contracts with regard to personal property. There may be good reasons for this, founded in natural equity and justice, but it would appear that this radical change in the law of personal property could not be

effected without statutory enactment; especially so in those · jurisdictions, in which, like in this State, the common law principles obtain except in so far as they are modified or abrogated by statute.

Jurisdiction of the subject matter means not simply jurisdiction of the particular case before the court, but jurisdiction of the class of cases to which the particular case belongs; and, of course, jurisdiction of the subject matter can neither be conferred upon the court by consent of the parties, nor want of it waived by either party.

It is, as the writer views it, clearly apparent from the facts set up in the bill that this case was entirely outside of equity jurisdiction and beyond equitable cognizance. It is true the complainant stated in his bill that he elected to and did claim a lien upon the furniture, but the contract set forth therein and the other facts alleged showed, beyond any controversy, that neither the complainant receiver, or the Bank of which he was receiver and which was one of the original parties to the contract, had any right or power whatever to make such an election or to claim such a lien. The subject matter set up in the bill negatived said allegation and showed plainly that no lien of any sort existed or could be claimed. Surely the bald assertion of the claim of a lien clearly negatived by the facts set up, could not possibly create and confer jurisdiction upon the ·equity court. The *ipse dixit* of the pleader possesses no such power. I do not differ so much with most of the principles of law so well stated in the able opinion of MR. JUSTICE WHITFIELD, as I differ with their application of the facts here involved; though some of the cases cited and propositions advanced therein do, to my mind, show a departure from time-honored fundamental principles. Of course, if the court had been guilty of mere error, or an erroneous exercise of a jurisdiction which existed, a motion to set aside the decree would have been properly denied.

But the court attempted to exercise a jurisdiction which never existed and its decree was therefore absolutely null and void, and should have been vacated on the motion made. There is an important distinction between the erroneous exercise of an existing jurisdiction of the subject matter, and erroneous assumption of a jurisdiction which does not exist or an erroneous usurpation of a jurisdiction which is exclusively lodged in some other forum or tribunal. The former is merely reversible on appeal; the latter, when it clearly appears, renders the judgment or decree null and void, and subject to be set aside on motion for that purpose by a party to the suit, who has been aggrieved thereby, unless he is for some recognized reason estopped from raising the question. 17 Am. & Eng. Encyc. Law, 2nd Ed., pp. 1041-6, *et seq.;* 7 R. C. L. 1039, 1043, 15 C. J. 729, 734, 852; Brown on Jurisdiction, 2nd Ed., sections 2, 2a, 3, 10, 26, 26c; and cases cited.

> "But whatever may be the object of the bill, the first and fundamental rule which is always indispensable to be observed, is, that it must state a case within the appropriate jurisdiction of a court of equity. If it fails in this respect, the error is fatal in every stage of the cause, and can never be cured by any waiver or course of proceeding by the parties; for consent cannot confer a jurisdiction not vested by law (See Section 472 and note a). And, although many errors and irregularities may be waived by the parties or be cured, by not being objected to, the court itself cannot act except upon its own intrinsic authority in matters of jurisdiction; and every excess will amount to a usurpation, which will make its decretal orders a nullity, or infect them with a ruinous infirmity."

Story's Equity pleadings (10th Ed.) Sec. 10, p. 9.

"In the judgment of the writer, the petition or declaration to support a valid judgment, even against a collateral attack, must be sufficient to withstand and support a judgment, had the defendant appeared and gone to trial without objection to the pleading, and then, after verdict, filed a motion in arrest." Brown on Jurisdiction, 2nd Ed., section 2a. "Consent cannot confer jurisdiction of subject-matter, jurisdiction of subject matter is the power to adjudge concerning the general question involved, and is not dependent upon the ultimate existence of a good cause of action in the plaintiff in the particular case before the court. It is the power to act and adjudicate concerning such general abstract question, so to speak, and determine and adjudge whether the facts presented call for the exercise of the powers conferred upon the court. This power must be determined by facts averred, and the relief asked, and while, as we have said, the petition need not in ordinary law or equity actions set forth, in either form or substance, a good cause of action, we think it must do so inferentially, so that the court may be called upon to exercise its powers in a legal manner. A judgment rendered by a court or tribunal having no power or authority to render the judgment, or determine the matter in issue, is absolutely null and void, and cannot be ratified by the legislature of the state, and may be attacked collaterally. If a court or tribunal pronounces a judgment it has no authority to grant, or one outside of the issues made and before the court for determination, then such judgment in excess of the power conferred is void as to such excess of its powers. We are now speaking of common law actions, and ordinary equity actions, in contradistinction to actions where special powers are conferred upon the court, not in accordance with the principles of the common law, or where statutory power is conferred, which we shall herein consider later in this

work.'' Brown on Jurisdiction, 2nd Ed., section 3. It is said by the court in Cooper v. Reynolds, 10 Wall. 308; ''By jurisdiction over the subject-matter is meant the nature of the cause of action or relief sought, and this is conferred by the sovereign authority which organizes the court, and is sought for in the general nature of its powers, or in authority specially conferred.'' In Hope v. Blair, 105 Mo. 85, 24 Am. St. 366, it is said: 'Jurisdiction may be defined to be the right to adjudicate concerning the subject matter in a given case. To constitute this there are three essentials: 1. The court must have cognizance of the class of cases to which the one adjudged belongs; 2. The proper parties must be present, and 3, the point decided must be in substance and effect within the issue.' Sec. 26, n. 1 and 3.'' Brown on Jurisdiction, section 3, note 3. See also Hayes v. McGee, 17 Fla. 158, 161; Finnegan v. Fernandina, 15 Fla. 379; Metcalf Co. v. Martin, 54 Fla. 531, 45 So. 463; Simmons v. Williford, 60 Fla. 359, 53 So. 452; Johnson v. McKinnon, 54 Fla. 221, 45 So. 23; Edmonds v. Gracy, 61 Fla. 593, 54 So. 899; Smith v. Powell, 80 Fla. 166, 85 So. 654; Tampa & Gulf Coast R. Co. v. Mulhern, 73 Fla. 146, 74 So. 297.

It necessarily follows that the decree of the court giving a deficiency judgment against the defendant for a large amount and an attorney's fee of $1000.00 was also void, because rendered in a cause of which the court had no jurisdiction. But if this conditional sale had involved *real estate,* thus giving the court jurisdiction for the foreclosure of the *vendor's lien,* it is very doubtful that the court would have been justified in rendering a deficiency decree. It is quite plain from the language of the contract that it was the purpose of the same to provide that in case of default and

repossession of the property by the seller, the retention by him of the money already paid on the contract would be considered as liquidated damages and full satisfaction of all demands against the buyer. In other words, if he repossessed the property the seller was to look to the property rather than to the buyer personally for the balance due. With this provision in the contract, a court of equity would hardly see its way clear to the rendition of a deficiency decree, after taking possession of the property from the buyer and selling it for the benefit of the seller, and the seller having retained all payments made. See Johnson v. McKinnon, 45 Fla. 388, 34 So. 272; McKinnon v. Johnson, 54 Fla. 538, 45 So. 451; and 3 Jones on Mortgages, section 1711. Chapter 7839 of the Acts of 1919 could hardly be construed to compel a court of equity to render a deficiency decree in all cases of lien foreclosure, regardless of the terms of the contract or the justice and equity of the case. It is true that act provides that if the proceeds of the sale shall not be sufficient to pay the debt and costs, a deficiency decree may be rendered for the balance. But that would not apply in a case where the taking of the property and the retention of the payments already made operated under the terms of the contract to cancel the debt. Furthermore, where, as in this case, there was no equitable jurisdiction to support the main case, the court could not go further and render a valid money decree without coming into conflict with the principle laid down in McMillan v. Wiley, 45 Fla. 487, 33 So. 993. There can be little doubt that the action of the court in this case amounted to an attempt to administer common law remedies in a court of equity and deprive the defendant of the right of trial by jury according to the court of the common law which was secured to him by the constitution. I cannot, therefore, but reach the conclusion that the order of the court below should be reversed

and the cause remanded with directions to enter an order granting the motion and vacating the former decree.

### En Banc.

### On petition for rehearing.

ELLIS, J.—The petition for a rehearing rests upon the argument that as the court of chancery had no jurisdictioin of the subject matter of the suit the decree of the court was void, and that even if the court had jurisdiction of the subject matter, the cause being one to foreclose a lien upon personal property given to secure the price agreed to be paid for it, the court should not have entered a deficiency decree for the difference between the amount due and the proceeds of the sale of the property applied to the debt. This argument rests upon the proposition that in the foreclosure of a vendor's lien where the vendor becomes the purchaser of the land at the foreclosure sale a deficiency decree will not be given for the difference between the price agreed to be paid and the amount applicable to the debt derived from the proceeds of the sale.

How this rule is affected by Chapter 7839, Laws of Florida, 1919, requiring a deficiency decree to be entered when the proceeds of the sale of the property subject to the lien shall not be sufficient to pay the debt and costs is not here determined. Before the passage of the Act referred to the power of the court to enter a decree in foreclosure of mortgages for any balance that may have been due to the complainant over and above the proceeds of sale was given by Rule 89 of Circuit Courts, Equity Actions, and was a discretionary one and could be granted or denied according to the facts in each case. See Realty Mortgage Co. v. Moore, 80 Fla. 2, 85 South. Rep. 155.

Such decrees were not entered upon bills to foreclose vendor's liens. See Johnson v. McKinnon, 45 Fla. 388, 34 South. Rep. 272; Johnson v. McKinnon, 54 Fla. 221, 45 South. Rep. 23, 13 L. R. A. (N. S.) 874 n.; 127 Am. St. Rep. 135, 14 Ann. Cas. 180.

The answer to the second argument is two-fold, there is Chapter 7839 *supra* and the case is not one to enforce a vendor's lien. A lien does not exist in favor of the seller of personal property for its purchase price after delivery.

The existence of a vendor's lien rests not in any rule of the common law but in exclusively a doctrine of equity adopted, it has been said, from the civil law which applied to the sale of both real and personal property, which rule courts of equity adopted only so far as it applies to realty but did not adopt it as applied to sales of personalty. So a seller of personal property has no lien for the price of the articles sold after the delivery of possession. See Moore v. Holcombe, 3 Leigh (Va.) 597, 24 Am. Dec. 683; Wellborn v. Williams, 9 Ga. 86, Am. Dec. 427; Michigan State Bank v. Hastings, 1 Douglass (Mich.) 225, 41 Am. Dec. 549; Gregory v. Morris, 96 U. S. 619, 24 L. Ed. 740; Cade v. Brownlee, 15 Ind. 369, 77 Am. Dec. 95 n; Newhall v. Vargas, 15 Mo. 314; Cross v. O'Donnell, 44 N. Y. 661; Jenkins v. Eichelberger, 4 Watts (Pa.) 121, 28 Am. Dec. 691 n; James v. Bird, 8 Leigh (Va.) 510, 31 Am. Dec. 668; Crompton v. Beach, 62 Conn. 25, 25 Atl. Rep. 446, 18. L. R. A. 187; 24 R. C. L. 127.

As the case is not one to enforce a vendor's lien the argument against the entry of a deficiency decree for the remainder of the purchase price of the property is without merit because there is nothing to prevent a seller of personal property by agreement with the purchaser from taking security upon the property sold for the unpaid purchase price.

If the agreement made between the Sponge Exchange Bank and F. E. Malone was an instrument given and taken to secure the payment of money it was a mortgage and subject to the same rules of foreclosure and to the same restraints and forms as are prescribed in relation to mortgages. See Section 3826, Revised General Statutes.

The foreclosure of mortgages or the enforcement of mortgage or other lien is a subject of equity jurisdiction. See Sec. 11, Art. V., Constitution; Sec. 3117, Revised General Statutes; Chapter 7839 *supra.*

The language of the instrument taken in connection with the allegations of the bill establishes the following facts: The property belonged to the bank; it agreed to sell it to Malone for a price agreed upon; part of the price was paid in cash and the remainder was agreed to be paid in five installments distributed over a period of six years; the deferred payments evidenced by promissory notes of Malone bearing six per cent interest until paid. The notes were unqualified and unconditional promises to pay certain sums of money at certain times. The possession of the property was immediately delivered to the purchaser, who agreed to keep it ''insured'' in a certain amount for a definite period and to pay the taxes levied upon it ''subsequent to the year 1918.'' The agreement contained a clause to the effect that the seller should have the ''option'' to retake possession of the property and retain all payments made upon it in satisfaction of all damages sustained if the purchaser should fail to pay the notes as they became due or any of them or to perform any agreement on his part to be performed. The purchaser retained possession of the property and used it as his own for about four years and paid the interest on all notes to December 31, 1920, and on one note to December 31, 1921. He failed to pay the notes which became due in March 1921, 1922 and 1923 and the seller

never exercised the "option" to retake possession of the property.

The agreement was, upon its face, an executory contract of sale with delivery of possession to the buyer. That is to say, under the agreement title remained in the seller (the Bank) which agreed to transfer it to the buyer upon the payment of the purchase price.

Under this agreement the seller had the option to forfeit and terminate the contract and retain all payments made on the purchase price of the property upon the happening of certain conditions. If it chose that course the Bank had the right to enter and take possession of the property.

An option is the power of choosing; the right of election, an alternative. It is the right of choice between two things, courses or propositions. The choice of one excludes the choice of the other called the alternative. It is loosely spoken of as a right of choice between several things or courses. Webster's New International Dictionary.

The alternative was the right to enforce the payment of the balance of the purchase price, in which case the title to the property would remain where the contract unforfeited had left it; that is, in the seller. The instrument, therefore, gave the seller a right of action to recover the purchase price of the property while the title to it remained in the seller under the agreement.

Unless the agreement was merely a bailment, which its terms deny, and as the retention of the absolute title to a thing sold is inconsistent with an action to recover the debt due for the purchase price of it, what could have been the purpose or intention of the parties in leaving the title to the property in the seller while giving it the right to proceed to the enforcement of the payment of the notes given for the balance of the purchase price unless it was to secure the

payment of the balance due? See Atkinson v. Japink, 186 Mich. 335, 152 N. W. Rep. 1079.

Until the seller chose the alternative of proceeding to enforce the payment of the balance due the contract was an executory one; but when it elected to take that course, the possession of the goods having been delivered to the buyer, the seller by taking that choice was enabled to apply the goods to the contract without increasing the damages resulting from the buyer's breach of it. So the contract became executed on the seller's part with the agreement that title should remain in it until the purchase price was paid. The purpose of such an agreement could be none other than that the goods should be held as security for the payment of the balance due in the event the seller should elect to enforce the payment of the purchase price. See note Pate v. Ralston, (158 Iowa 411, 139 N. W. Rep. 906,) 51 L. R. A. (N. S.) 735, n. 738.

Upon the seller's election to enforce the payment of the purchase price therefor the agreement became one securing to the seller a lien upon the property as security for the payment of the debt. If the Bank had retained possession of the goods while having the right to enforce the payment of the purchase price it would have had a vendor's lien for the balance due. The agreement merely gave it a lien in the nature of a chattel mortgage. It was signed by both seller and purchaser and its execution witnessed by one witness. The voluntary surrender of the possession of the property by the seller to the purchaser extinguished the common law lien for the purchase price but as it was intended by the parties that the instrument should be a security for the payment of money the statute fixes its character as a mortgage.

We say that the instrument was intended by the parties to be a security for the payment of money. Such inten-

tion is apparent in all like transactions. They originate in the desire of one party, the owner of the chattel, to sell it and the correlative desire of the other party, the purchaser, to acquire it. This mutual desire cannot be realized except by barter and sale of the chattel. They agree upon the price to be paid by the purchaser and the terms of payment. If credit is to be extended to the purchaser the question of security or no security for such payment is considered. If the seller desires security for the deferred payments, he either retains the chattel in his possession, thereby reserving to himself a common law lien upon it for the balance of the purchase price, or takes a chattel mortgage in due form to secure such payments, or he executes a conditional bill of sale reserving to himself the option, on condition of the purchaser's default, to rescind the sale and forfeit all payments made or bring his action on the contract for the balance due.

By paying part of the purchase price and taking possession of the property the purchaser acquires an equitable interest in the thing notwithstanding the continuing of the legal title in the seller by the terms of the agreement. See Varn et al. v. Ashbrook, 84 Fla. 626, 94 South. Rep. 384; Aycock Bros. Lumber Co. v. First Nat. Bank of Dothan, 54 Fla. 604, 45 South. Rep. 501.

This doctrine is applicable to the sale of real or personal property. Indeed it would seem to be of peculiar applicabality to sales of personal property because as the possession of personal property is *prima facie* evidence of ownership in the person in possession, the owner who voluntarily surrenders it to the possession of one with whom he is under contract to sell it does so in full knowledge of the rule and voluntarily proclaims to the world that the buyer is owner. There exists some sophistry in the argument which would justify a repudiation of the voluntary proclamation by the seller against a *bona fide* purchaser for value

without notice on the strength of a secret understanding between the seller and buyer.

When a conditional sales contract is signed by the buyer he thereby gives his consent to the encumbrance upon his equitable interest in the chattel.

In the absence of any statutory provision declaring an instrument given to secure the payment of money to be a mortgage the rule settled by respectable authority is that where a sale is made of personal property on the install-ment plan, providing for stated payments evidenced by a contract continuing the title in the vender until all pay-ments are made with a condition that upon default of the vendee his right in the property shall fail and the vendor shall have the right to a surrender of the property and to treat all payments made as forfeited, the vendor may elect to consider the property as security for the payment of the balance due and may invoke the aid of a court of equity to the extent of subjecting the property to the satisfaction of the equitable lien thus created and have a judgment against the vendee for any deficiency should the amount realized from the sale of the property fail to fully liquidate the balance due. See Ballinger v. West Publishing Com-pany, 44 App. Cas. D. C. 49; Wolf Co. v. Hermann Sav. Bank, 168 Mo. App. 549, 153 S. W. Rep. 1094; Gigray v. Mumper, 141 Iowa 396, 118 N. W. Rep. 393; Singer Sewing Machine Co. v. Leipzig, 113 N. Y. Supp. 916; Hollenberg Music Co. v. Morris, (Tex. Civ. App.) 35 S. W. Rep. 396; Standard Furniture House v. Burrows, 59 Wash. 455, 110 Pac. Rep. 13.

The vendor in the case at bar never availed itself of the option to retake possession of the property and forfeit all payments made under the contract but elected to enforce the payment of the balance due on the price of the prop-erty. That feature of contracts for the sale of personal

property continuing the title in the vendor until the payment in full of the purchase price, called conditional sale, is an attempt to reserve a vendor's lien, which existed at common law and was continued so long as the vendor retained possession of the property and which was lost upon the delivery of possession to the buyer.

Such an agreement of sale when signed by both vendor and purchaser results in securing to the vendor the option of rescinding the sale and retaking possession of the property, subject to the power of equity to prevent an unconscionable forfeiture, or waiving the right to possession and forfeiture, treating the instrument as one to secure the payment of money.

Under such a contract the vendor may proceed at law to recover possession of the property or in equity to enforce the instrument as one given to secure the payment of money. See Sec. 3836, Revised General Statutes, *supra*.

This doctrine is in harmony with the maxim that equity abhors a forfeiture and is consistent with the power of a court of equity under some circumstances to declare such a contract a mere security and protect the purchaser from unconscionable forfeiture.

The jurisdiction of the chancery court to entertain this case being shown and the defendant having appeared by counsel, thus subjecting his person to the court's jurisdiction, the decree, although it may be subject to the criticism of procedural error, is not void.

The petition for a rehearing is therefore denied.

WHITFIELD, TERRELL, STRUM AND BUFORD, J. J., concur.

BROWN, C. J., dissents.

WHITFIELD, J., concurring.—The contract of sale in this case does not stipulate that the parties respectively shall

invoke only stated remedies in case of breach of the contract, but it is provided that at the option of the seller the contract shall "be forfeited and terminated" and the seller shall have "the right to re-enter and take possession * * * without being liable to an action therefor" and that payments made on the contract shall be forfeited to and retained by the seller "in full satisfaction and liquidation of all damages" sustained by the seller. The contract option of the seller was not exercised and remedies afforded by the law were open to the seller upon a breach of the contract by the purchaser.

Even if the signing of the contract by the purchaser did not under the statute make the contract a mortgage, the contract was signed by the purchaser and stated that the title remained in the seller, though the buyer had possession of and an interest in the goods, having paid a part of the purchase price. The retention of title by the seller was for the purpose of securing the payment of the entire purchase price of the property and such contract on the part of the purchaser is in effect a lien upon the equitable or other right of the purchaser who had partly paid for and was in possession of the property covered by the contract. It is a mortgage where the title is reserved as security. Chicago Ry. Equipment Co. v. Merchant's Bank, 136 U. S. 268, 10 Sup. Ct. Rep. 999; Ballinger v. West Publishing Co., 44 App. Cas. (D. C.) 49. See Howell v. Commercial Bank, 51 Fla. 460, 40 South. Rep. 76; Varn v Ashbrook, 84 Fla. 626, 94 South. Rep. 384; Gigray v. Mumper, 141 Iowa 396, 118 N. W. Rep. 393; Campbell Printing Press & Manuf'g Co. v. Powell, 78 Tx. 53, 14 S. W. Rep. 245; Hollenburg Music Co. v. Morris (Tex. Civ. App.) 35 S. W. Rep. 396; Singer Sewing Mach. Co. v. Leitzig, 113 N. Y. Supp. 916; 35 Cyc. 491, 696, 708; 11 C. J. 414; 17 A. L. R. 1421 Notes; In re National Cash Register, 98 C. C. A. 425, 174 Fed. Rep. 579.

Where goods upon partial payment of their price are delivered to a purchaser for his use under a contract of sale signed by the purchaser, which contract contains an unconditional promise by the purchaser to pay the entire unpaid purchase price, and also stipulates that the title to the goods delivered shall remain in the seller till full payment of the purchase price, or, as in this case, that the seller will convey the title to the purchaser upon payment of the purchase price, and further that the seller may retake the goods upon default of any payment on the purchase price and that the buyer shall then forfeit to the seller all payments that have been made on the purchase price, such a contract may at the option of the seller be regarded as an executory contract of sale and the rights of the seller thereunder may be enforced as provided in the contract or by law; or the contract may by the seller be regarded as security for the purchase price and enforced as may be provided by law.

Taken in connection with the delivery of the goods to the buyer, such a contract may, by the seller, be regarded as a reservation of the title with a right to retake the property under the contract or to replevy it under the law with a forfeiture in each case by the purchaser of all payments made; or, taken in connection with the delivery of the goods to the buyer, such a contract may, by the seller, be regarded as a transfer of the title to the goods to the buyer with a right of the seller to bring an action for the unpaid purchase price, on a judgment for which unpaid amount execution may issue generally, or the contract signed by the purchaser may be regarded as creating a lien upon the property as security for the payment of the entire purchase price. The seller cannot invoke inconsistent remedies, but must elect between inconsistent remedies. See American Process Co. v. Florida White Pressed Brick Co., 56 Fla. 116, 47 South. Rep. 942.

Upon default of the buyer, the seller may exercise his contract option to retake the property without suit or action, or he may elect to apply one of the remedies afforded by law, viz: the seller may assert title and right of possession by bringing replevin to recover possession of the goods, or he may elect to waive his right to assert title and recover the goods and bring an action for the purchase price, or he may enforce his security in equity, with such results as follow in each case under the law.

Under such a contract if the seller attempts to enforce an unconscionable forfeiture of payments made, by retaking or replevying the goods, after they have been in large part paid for, the buyer may appropriate equitable procedure to redeem the goods under the lien feature of the contract by paying the balance of the purchase price. Ragsdale v. Miami Cadillac Co., 88 Fla. 302, 102 South. Rep. 494. See also Bankston v. Hill, 134 Miss. 288, 98 South. Rep. 689. Where the value of the goods greatly depreciates and the seller elects to sue for the purchase price or to enforce his lien, the buyer may perhaps have no relief from a general execution on a judgment for the balance of the purchase price or from a valid deficiency decree after a foreclosure sale for less than the balance due the seller. The courts cannot afford relief against improvident purchase of property that may lose its value before it is paid for as contracted.

In view of the statutory provisions that any instrument of writing conveying or selling property, either real or personal, for the purpose or with the intention of securing the payment of money, shall be deemed and held to be a mortgage; and that a mortgage is a lien and not a conveyance of the legal title or of the right of possession, Section 3836, 3837, Revised General Statutes, 1920, where a seller of goods delivers the possession of them to a buyer for his use, by which delivery the title ordinarily passes with the delivery, but by contract signed by both the seller and the

purchaser, it is stipulated that the title to the goods shall remain in the seller till the entire purchase price thereof is paid or that the seller will convey the title to the purchaser upon payment of the entire purchase price, the title being retained by the seller to secure the payment of the balance of the purchase price, and the buyer promises unconditionally to pay the entire purchase price, the buyer thereby acquires a proprietary interest in the goods because of the delivery thereof to him and the possession thereof for his use and the payment of a part of the purchase price; and by signing such contract of sale, the purchaser in effect gives a lien in the nature of a mortgage on the property to secure the payment of the entire purchase price; and on default in payment by the purchaser the seller may enforce his lien with such results as follow under the law.

In Campbell Printing Press & Manuf'g Co. v. Walker, 22 Fla. 412, 1 South. Rep. 59, and Dodson Printers' Supply Co. v. Corbett, 78 Fla. 257, 82 South. Rep. 804, and similar cases the right to retake the property was asserted and sustained. See Aycock Bros. Lumber Co. v. First Nat. Bank of Dothan, 54 Fla. 604, 45 South. Rep. 501; American Process Co. v. Florida White Pressed Brick Co., 56 Fla. 116, 47 South. Rep. 942.