PROTECTIVE HOLDING CORPORATION, *et al.*, v. CORNWALL COMPANY, *et al.*

173 So. 804.
Division B.
Opinion Filed October 30, 1936.
Rehearing Denied November 18, 1936.
On Rehearing March 22, 1937.
Further Rehearing Denied April 24, 1937.

*Shutts & Bowen, George A. Pierce,* and *A. M. Woore,* for Appellants;

*Austin Miller and S. S. Blondheim,* for Appellees.

PER CURIAM.—The Cornwall Company brought its bill of complaint against the Burns Mortgage Company, the Protective Holding Corporation, the Miami Building and Loan Association and Alice L. Zapf, a free dealer also known as Alice L. Bossert, praying that the deficiency de-

cree rendered against Alice L. Bossert be decreed null and void and of no effect as against Alice L. Zapf, also known as Alice L. Bossert, and removed as a cloud from the title of plaintiff to its real property hereinafter described.

The bill of complaint alleged in substance that plaintiff owned in fee simple "Lot Two (2), Block two (2), St. Elmo, according to plat thereof recorded in Plat Book 3, page 77, of the public records of Duval County, Florida," which was conveyed to plaintiff by Alice L. Zapf, a free dealer, by deed dated April 18, 1932, purporting to convey a free, unincumbered title in fee simple; that Alice L. Zapf, also known as Alice L. Bossert, married Joseph F. Zapf in Columbia County, Florida, on December 8, 1924, and is still married to Joseph F. Zapf; that Alice L. Zapf was, by an order of the Circuit Court of Duval County, July 23, 1931, made a free dealer under the name of Louise Zapf; that Louise Zapf, Alice L. Zapf and Alice L. Bossert are one and the same person; that Cecil E. Kirby and wife, Gwendolyn Smoak Kirby, being indebted to the Miami Building & Loan Association in the sum of $34,000.00, did execute and deliver to the latter their promissory note in that amount together with their mortgage encumbering certain described property located in Dade County; that thereafter on December 10, 1925, Cecil E. Kirby and wife, Gwendolyn Smoak Kirby, conveyed said property to Alice L. Zapf under the name of Alice L. Bossert, the latter assuming the mortgage; that on October 17, 1928, the Miami Building and Loan Association brought its bill of complaint in the Circuit Court of Dade County to foreclose said mortgage, naming as parties defendant Cecil E. Kirby and wife, Gwendolyn Smoak Kirby, Alice L. Zapf under the name of Alice L. Bossert, and others, but did not make Joseph F. Zapf, husband of Alice F. Zapf, a defendant; that final

decree was entered in said cause and the property sold by the Master on Rule Day in 1929 to Miami Building & Loan Association for $5,000.00; that the sale was confirmed by the court and on September 19, 1929, a deficiency decree was entered against Alice L. Zapf, under the name of Alice L. Bossert, and others, for $43,734.39; that on October 1, 1931, a certified copy of said deficiency decree was duly recorded in Duval County, Florida; that the Miami Building & Loan Association, on January 13, 1930, assigned said deficiency decree to the Protective Holding Corporation, said assignment being recorded in Dade and Duval Counties; that plaintiff is informed and believes that Protective Holding Corporation has parted with its interest in said deficiency decree to Burns Mortgage Company; that said deficiency decree constitutes a cloud upon plaintiff's title in the hereinabove described property; that said deficiency decree was, as to Alice L. Bossert, also known as Alice L. Zapf, at the time of its entry and has been at all times since null and void, because Alice L. Zapf, was, on December 10, 1925, the date she assumed the mortgage in the deed from Cecil E. Kirby and wife, Gwendolyn Smoak Kirby, and at all times since, the wife of Joseph F. Zapf; and Joseph F. Zapf has not joined Alice L. Zapf, also known as Alice L. Bossert in any documents, deeds, contracts, mortgages or other papers in anywise connected with said property and/or mortgage; and that Alice L. Zapf has not, since being licensed as a free dealer, in anywise assumed any liability arising out of the same.

Alice L. Zapf answered the bill of complaint, admitting all the allegations contained therein, and for a counter-claim reaverred the matters alleged in the bill of complaint, and prayed that said deficiency decree, insofar as it purports to enter judgment against this defendant, be decreed to be

null and void and of no effect; and offered to do such equity as the court shall deem meet and proper, by executing quit claim deeds to the property involved in said cause wherein said deficiency decree was entered, or otherwise, as the court may direct.

The defendants, Protective Holding Corporation and the Miami Building & Loan Association, made a motion to dismiss the bill of complaint which motion was denied by the court.

A decree *pro confesso* was entered against the Burns Mortgage Company for failure to answer or make a motion to dismiss the bill of complaint on or before the Rule Day in July, 1932.

The Protective Holding Corporation and the Miami Building & Loan Association filed their answer to the bill of complaint, portions of which were stricken by the court, upon motion. The portion which was allowed to remain stated that defendants were without knowledge as to the allegations in paragraphs 1 and 2 of the bill and demanded strict proof thereof; admitted the allegations in paragraphs 3, 4 and 5 of the bill; and admitted that an undivided portion of said deficiency judgment had been assigned to the Burns Mortgage Company. In further answering the bill of complaint, the answer stated that said deficiency judgment does not constitute a cloud upon plaintiff's title, but that plaintiff's alleged title constitutes a fraudulent attempt on behalf of plaintiff and Alice L. Bossert to defraud the Protective Holding Corporation and the Miami Building & Loan Association; that on October 17, 1928, the Miami Building & Loan Association instituted foreclosure proceedings against Alice L. Bossert as a widow and she defended as a widow and a subscribing stockholder, and that a deficiency decree was duly, regularly and properly entered

against her; that in furtherance of her scheme, Alice L. Bossert organized the Cornwall Company to make it appear that said Company would be an innocent purchaser of the properties against which said deficiency decree became a lien, but said Company took title to said property without consideration and subject to said deficiency decree; that plaintiff is not entitled to any consideration or standing in a court of justice or to any relief in a court of equity, because plaintiff is a party to said fraudulent scheme in that plaintiff, appearing to be a separate legal entity, is in fact the defendant Alice L. Bossert; that a court of equity will pierce the corporate veil and find plaintiff and Alice L. Bossert to be the same; and that neither Alice L. Bossert nor plaintiff can come into equity with clean hands because of this fraudulent scheme; that plaintiff is not entitled to any consideration or standing in a court of justice or to any relief in a court of equity in that plaintiff must first offer to do equity and must come into equity with clean hands, and in that Alice L. Bossert, as part of her fraudulent plan, is suing through the Cornwall Company, as a separate legal entity, but plaintiff is one and the same as Alice L. Bossert, who not only failed to do equity, but comes into equity with unclean hands in that said corporation, conceived in fraud, wrongfully and fraudulently obtained jurisdiction and is seeking the assistance of a court of equity in the perpetration of fraud upon defendants; that Alice L. Bossert was and is legally bound to pay said deficiency decree regardless of statutory obligations placed upon members of building and loan associations, in that she contracted as a widow and made oath in her contracts that she was a widow, and is estopped to deny the same and to confess criminal fraud; and in that she did make valid contracts when a widow and is now adjudged, as alleged in her bill of complaint, to have

the capacity and mentality to transact her own business and be obligated and bound in that she is licensed as a free dealer.

C. C. Howell, Esq., was appointed Special Master to take testimony and report his findings of law and fact to the court.

Pursuant to this appointment, the Special Master made his report which contained the following findings:

"The suit is brought to remove, as a cloud from the plaintiff's title to the lands described in the Bill, a deficiency decree rendered by the Circuit Court of Dade County, Florida, against the defendant Alice L. Zapf, who is alleged and proved to have been a married woman at all times now pertinent. Under the name of Louise Zapf, she was made a free dealer by a decree of this Court rendered July 23, 1931. The Deficiency Decree was rendered September 17, 1929, and duly recorded in Duval County, Florida, on October 1, 1931. It grew out of the assumption-of-mortgage transaction, and the foreclosure suit, which are recited in the admitted paragraphs III and IV of the Bill, the married woman having assumed the Mortgage under date of December 10, 1925, and the foreclosure suit having been instituted October 17, 1928. On March 15, 1932, one Austin Miller, who had claimed title to the land since 1919 and had been thereafter in continuous actual possession of it, conveyed it to the defendant married woman, Zapf. For the reasons shown by the testimony (pp. 14, 15 and 31) she conveyed the property on April 18, 1932, to the plaintiff, Cornwall Company, Inc. This conveyance was by her alone.

"The defendant married woman admits the bill's allegations, incorporated them in her answer, and prays that the deficiency decree against her be cancelled.

"The contest against the plaintiff is by Protective Holding Corporation and the Miami Building & Loan Association, the single defense of whose joint answer (after the Court's order of May 15, 1933, striking certain parts of the answer as filed May 1, 1933) is that the plaintiff Cornwall Company is merely another name for Zapf; that it was organized for the purpose of so manipulating the title to the land involved that this case would contest for her the validity of the deficiency decree against her; and that the Cornwall Company as a corporate entity is a party to the fraudulent scheme alleged in detail in the answer.

"There is no evidence to support this defense; and upon the issue made by it I find for the plaintiff. The uncontradicted evidence shows that the plaintiff is a holding corporation, organized, owned, and managed by Miller and wife, who are, with the exception of the Secretary who apparently holds only enough of the corporation's stock to qualify her, the only stockholders; that those three individuals are its officers; and that the defendant Zapf, has never been a stockholder or an officer or agent of the plaintiff, or had any connection with it except the conveyance from her to it of the lands here involved.

"The corporate defendants contend that because Miller's name is signed to the pleadings filed by Zapf in the Dade County suit, the plaintiff corporation can only stand before this Court in the same light that falls around Zapf. Miller's testimony, uncontradicted, is that such use of his name was without his consent or knowledge. But since the Court has stricken sub-paragraphs (a) to (h) inclusive of the corporate defendant's answer, and as the evidence shows the non-identity of the plaintiff and Zapf, this contention is of little if any importance; and it is not material, I think, to determine whether Miller, as one of her counsel to record

in the foreclosure suit, is chargeable with knowledge of that suit, or, if so, whether such knowledge would be imputed to the corporate plaintiff. First Bond & Mortgage Co. v. Yancey, 104 Fla. 229, 139 So. 597, 599.

"Pursuant to sub-paragraph (f) of paragraph VIII of their answer, the corporate defendants show that in the Dade County foreclosure suit the bill of complaint was filed against 'Alice L. Bossert, a widow,' who is shown by the testimony here to be the same person as the defendant Alice L. Zapf; that summons was served upon her, that she appeared, filed an answer, and applied for leave to file an amended answer. In none of these pleadings, some of which were signed by her individually, did she indicate that she was not a widow.

"I respectfully submit the following ·

## "Conclusions. and Recommendations

"1. That the aforesaid deficiency decree against the defendant Alice L. Zapf be decreed, so far as the plaintiff's title to the land described in this bill is concerned, to be of no effect, and that said decree be removed as a cloud from the title of the plaintiff to the said land.

"2. That the counterclaim included in the answer of the defendant Alice L. Zapf be dismissed; because (1) of her representations, implied, but definite, to the Dade County Circuit Court in the foreclosure suit, that she was a widow. Ponce DeLeon Fountain of Youth v. Day, 90 Fla. 197, 105 So. 814; Brooks v. Laurent (5th C. C. A. Fla. 1899) 98 F. 647; 654, et seq., cf. Mexican Crude Rubber Co. v. Ackley, 101 Fla. 552, 134 So. 585; (2) Her coverture, in defending against a bill which described her as a widow, is a matter which appropriately could have been and should have been adjudged in the Dade County,

Florida, suit, and the result of that decree is *res adjudicata* of the point presented by her counter-claim (Jones v. Morgan, 59 Fla. 542, 52 So. 140); and (3) The Dade County Circuit Court having jurisdiction of her person, as well as the subject matter, in the foreclosure suit, she cannot collaterally attack the deficiency decree rendered against her in that suit. Malone v. Meres, 91 Fla. 709, 109 So. 677."

The plaintiff and Alice L. Zapf each filed their exceptions to the report of the Special Master.

Thereafter, on February 1, 1934, Alice L. Zapf filed her motion praying that the court allow her further time in which to serve a copy of her answer upon the solicitors of record for the cross defendants, stating that she filed her answer to the bill of complaint, asserting a counter-claim and seeking affirmative relief, and that through inadvertence or mistake a copy thereof was not served upon cross defendant or their solicitors; that cross defendants neither replied to nor objected to the affirmative portion of said answer; that at the hearings, the issues raised by the affirmative portion of said answer were treated in the same manner as if issue had been joined thereon; and that no injury would be done cross defendants by allowing further time in which to serve a copy of said answer upon them or their solicitors of record.

The motion was granted by the court, and the cross defendants were ordered to make answer thereto on or before March 15, 1934.

The cross defendants, on March 26, 1934, made answer to the counter-claim of Alice L. Bossert which contained in substance the following defenses: (1) that Alice L. Bossert, now claiming to be Alice L. Zapf and the wife of Joseph F. Zapf, became legally bound and personally obligated for the payment of the moneys she now seeks to

avoid paying; (2) that she received the benefits of said loan which she now wishes to retain without any obligation or restitution; (3) that she is estopped or otherwise precluded from claiming or showing her celibacy as being that of a married woman at the time she negotiated and consummated the transaction; (4) that she cannot obtain affirmative relief in a court of equity involving the matters set forth in this cause, because of the fraud in fact, the fraud in equity and the fraud in law perpetrated by her upon these defendants and because she is coming into a court of equity with unclean hands seeking affirmative relief; (5) that because of her successful manipulation of such fraudulent scheme, damages were sustained by these defendants in excess of $43,734.39; and (6) that she cannot do equity in the premises, as suggested in her counter claim.

This answer, upon motion, was ordered stricken by the court and cross-defendants were allowed until the Rule Day in June, 1934, in which to file their amended answer.

Cross-defendants filed their amended answer to the answer and counter claim of Alice L. Zapf, stating the following defenses: (1) That Alice L. Bossert, now claiming to be Alice L. Zapf and the wife of Joseph F. Zapf, is attempting to do indirectly what she cannot do directly; (2) that she, through trickery, chicanery and collusion is attempting to use a worthless, abandoned property to indirectly and collaterally attack a judgment of another court binding on the court in question; (3) that she is estopped because of her action, from filing a bill to attack the deficiency decree, yet, she is using this suit to accomplish the same purpose; and (4) that she is bound by the foreclosure suit had in Dade County, Florida, and all judgments and decrees rendered therein, including the deficiency decree.

The amended answer of cross-defendants was also stricken by the court upon motion.

Upon the motion of Alice L. Zapf, the court entered a decree *pro confesso* against the Protective Holding Corporation and the Miami Building & Loan Association on the affirmative matter set up in the answer of Alice L. Zapf; and the Court appointed C. C. Howell, Esquire, Special Master and ordered him to take testimony of cross-plaintiff, Alice L. Zapf, in support of her answer and counter claim and to make his report to the Court thereon together with his findings of law and fact.

Further testimony was taken before the Special Master and he reported the following findings:

"I make and submit the following:

"FINDINGS:

"First: The findings contained in the Special Master's Report filed in this cause by me on December 19, 1933, and signed C. C. Howell.

"Secondly: That the allegations of the answer and counter claim of the said Alice L. Zapf are true and that she is entitled to the relief therein and thereby prayed. Accordingly, I

"RECOMMEND:

"That a decree be rendered pursuant to the prayer of said counter claim, cancelling the deficiency decree therein described; and, in view of the decrees by this Honorable Court rendered on May 10, 1934, and July 20, 1934, respectively, I withdraw the conclusion and recommendation numbered 2, contained in the aforesaid Special Master's Report filed December 19, 1933."

The cross-defendants, the Protective Holding Corpora-

tion and the Miami Building & Loan Association, filed their exceptions to the report of the Special Master.

Final decree was rendered in the cause on March 15, 1935, in which the Chancellor made the following findings:

"(a) That this Court has jurisdiction of all and singular the parties hereto and the subject matter hereof.

"(b) That the plaintiff is the owner in fee simple and has been in possession of a certain lot, piece or parcel of land lying in the County of Duval, State of Florida, described as follows:

"Lot Two (2), Block Two (2), St. Elmo, according to plat thereof recorded in Plat Book 3, page 77, of the public records of Duval County, Florida.

"(c) That the defendant, Alice L. Zapf, formerly Alice L. Bossert, was lawfully married to one Joseph F. Zapf in Columbia County, Florida, on the 8th day of December, 1924, and that the said marriage relation still exists.

"(d) That on the 10th day of December, 1925, upon which date one Cecil E. Kirby and Gwendolyn Smoak Kirby, his wife, made, executed and delivered to the said Alice L. Zapf, under the name and style of Alice L. Bossert, that certain deed recorded in Deed Book 863, page 40, of the public records of Dade County, Florida, wherein and whereby said Alice L. Zapf, under the name of Alice L. Bossert, assumed that certain mortgage dated the 7th day of October, 1933, made by said Cecil E. Kirby and Gwendolyn Smoak Kirby, his wife, to the defendant, The Miami Building & Loan Association, which mortgage was recorded in Mortgage Book 551, page 228, of the public records of Dade County, Florida, the said Alice L. Zapf, also known as Alice L. Bossert, was a married woman, being the wife of the said Joseph F. Zapf.

"(e) That on the 17th day of October, 1928, upon which date the defendant, the Miami Building & Loan Association, exhibited its bill of complaint in the Circuit Court in and for Dade County, Florida, in Chancery, being case No. 25060, wherein and whereby it sought to foreclose the said mortgage, and upon the 17th day of September, 1929, the date upon which a deficiency decree was entered and recorded in Chancery Order Book 175, page 124, in the office of the Clerk of the Circuit Court of Dade County, Florida, against the said Alice L. Zapf, under the name and style of Alice L. Bossert, the said Alice L. Bossert was and at all times between said dates was and still is a married woman, being the wife of the said Joseph F. Zapf.

"(f) That the said Alice L. Zapf, also known as Alice L. Bossert, being a married woman at all and singular the times and dates hereinabove specified, and it further appearing that the said Alice L. Zapf got nothing or was in nowise enriched, either in person or estate, in and by the supposed assumption of the said mortgage, the Court finds that the Circuit Court in and for Dade County, Florida, was without power or jurisdiction to enter the said deficiency decree against the said Alice L. Zapf, also known as Alice L. Bossert, and that the said deficiency decree, in so far as the same purports to make and enter judgment against the said Alice L. Zapf, also known as Alice L. Bossert, is, therefore, null, void and of no effect."

And the Chancellor ordered that the deficiency decree, as to Alice L. Zapf, was null and void and of no effect; and ordered the said deficiency decree removed as a cloud upon the title of plaintiff to lot two (2), Block Two (2), St. Elmo, according to the plat thereof recorded in Plat Book 3, page 77, of the public records of Duval County; and ordered that plaintiff's exceptions to the Master's Report

in so far as they are consistent with his decree are sustained and in so far as they are inconsistent with this decree are overruled. ·

The cross-defendants, the Protective Holding Corporation and the Miami Building & Loan Association, filed their notice of appeal from the Chancellor's rulings in the final decree as well as in certain orders previously made.

The four questions presented in this case may be reduced to two questions: (1) Can plaintiff maintain its bill in equity and (2) can Alice L. Zapf maintain her counter claim as against the Protective Holding Company and the Miami Building & Loan Association?

We adopt as our finding of facts in this case, the finding as made by the Chancellor, which is substantially the same finding as made by the Special Master.

Alice L. Zapf, while married and before being made a free dealer, agreed with the Kirbys, from whom she purchased the land, to assume the mortgage held by the Miami Building & Loan Association on the lands in question in Dade County, at the time she took conveyance of the same. She also signed an assumption of mortgage agreement, which was not witnessed, for the Miami Building & Loan Association. Her husband did not enter into any of these transactions in any manner. The Miami Building & Loan Association foreclosed the mortgage against Alice L. Bossert as a widow and took a deficiency judgment against her as a widow, which judgment was assigned to the Protective Holding Corporation. The record fails to show any fraud on the part of Alice L. Zapf, in allowing herself to be described as a widow in these transactions and proceedings.

A personal judgment or decree *in personam* against a married woman cannot be enforced. See Lewis and wife

v. Yale, 4 Fla. 418; Rice v. Cummings, 51 Fla. 535, 40 So. 889. And she cannot either at law or in equity bind herself so as to authorize a personal judgment against her. Cornell v. Ruff, 105 Fla. 504, 141 So. 535.

Married women can contract and convey property only as provided by law, and void contracts cannot be given effect by the doctrine of estoppel in the absence of a statute permitting it. Wilkins v. Lewis, 78 Fla. 78, 82 So. 762. A married woman cannot give herself legal capacity by falsely representing that she has such capacity. Wilkins v. Lewis, *supra.*

The Miami Building and Loan Association did not seek, by its bill in equity against Alice L. Bossert, *et al.,* to enforce a stock subscription, as Appellant's argument and citations under the fourth question might indicate, but sought to foreclose a mortgage. Section 6174 C. G. L. provides that married women may become stockholders in building and loan associations, and shall be subject to the same liability on stock as other members. This section further provides that married women may procure loans upon their separate real estate by *uniting with their husbands in executing mortgages thereon.* This statute does not dispense with the legal requirement of the husband joining the wife in executing notes, mortgages, contracts and other similar transactions. See Equitable Building & Loan Co. v. King, 48 Fla. 252, 37 Sou. 181.

A mortgage that is executed or assumed by a married woman under her name as a widow is void because her husband did not join in the execution or assumption as provided by law. Wilkins v. Lewis, 78 Fla. 78, 82 Sou 762.

In Rice v. Cummings, 51 Fla. 535, 40 Sou. 889, we held:

"A court of equity which has entered up a deficiency judgment against a woman, in ignorance of the fact of her

coverture, may four years thereafter vacate such judgment upon the petition of such woman and her husband, in the absence of *laches* or intervention of the rights of third parties."

In the body of that opinion it was said:

"No attack has been made upon the validity of the decrees establishing the lien upon the mortgaged property and ordering the sale thereof to enforce the lien nor upon the validity of sales, nor upon the supplemental decrees in so far as they confirmed those sales, but only upon the general money judgments contained therein; our practice permitting the complainant in foreclosure case to obtain in the same proceeding a deficiency judgment without the necessity of resorting to a separate action in another forum. This deficiency decree or judgment, however, does not obtain additional virtue by being born in a court of equity and is at last but a judgment at large and as such is without force against a married woman, nor can it by any process of reasoning be converted into a 'charging in equity a married woman's separate estate, nor a sequestration of the rents, issues and profits thereof;—the only method under our Constitution and laws whereby her separate estate may be subjected *in invitum* to the payment of her debts.

"It would be usurpation of authority upon the part of a court in this State to decree a *general personal judgment* against a married woman, not a free dealer, and as to the force and effect of the 'free dealer' statute, we express no opinion, and if such judgment or decree be in form rendered, it could only be attributed to a fraud upon the court, a suppression of the fact of coverture, or such ignorance of a constitutional right in her behalf, as would in law avoid the judgment.

"It is immaterial to consider what effect should be given

to a misrepresentation in the making of the mortgage on the part of the mortgagor that she was *feme sole;* the estoppel could only go to the validity of the mortgage as a lien, and thus far it has been enforced without question, or it might become a basis for charging under constitutional limitations her other separate estate in equity, but that is not before us. There is no basis for an estoppel as to the husband, who is given substantial rights in his wife's property nor are his rights impaired by his continued absence in another State, and the wife has promptly availed herself of her constitutional shield, when and as often as an actual attempt has been made to assail it.

"Upon the facts set forth in the petition the Court, whose process was being used in violation of a constitutional right, based upon a judgment that it should not and could not, within the limits of the law have entered, would be authorized to stay that process and vacate that judgment."

While the Court had jurisdiction to foreclose a mortgage and to enter a decree of foreclosure, and also had jurisdiction to enter a deficiency decree under some conditions, the Court was without power because of constitutional limitations to enter a valid and binding deficiency decree against a married woman.

It, therefore, follows that while the judgment by way of deficiency decree here under consideration may not be totally void yet it is without force or effect to create a lien on the married woman's separate property and it is within the jurisdiction and power of a court of equity to so adjudicate. This Court, as has hereinbefore been stated in the case of Rice v. Cummings, *supra,* in referring to a deficiency decree identical with the one in this case in so far as its basis was concerned, said:

"Upon the facts set forth in the petition the court, whose

process was being used in violation of a constitutional right, based upon a judgment that it should not and could not, within the limits of the law have entered, would be authorized to stay that process and vacate that judgment."

If it was a judgment that the court should not and *could not* within the limits of the law have entered, it certainly cannot be lawfully effective and, therefore, may be enjoined and suppressed in collateral proceedings, just as an attempt to enforce a judgment by levy and attempting to subject homestead property to a judgment may be enjoined.

In Malone v. Mears, 91 Fla. 709, 109 Sou. 677, the distinction between power and jurisdiction was dealt with at great length in the able opinion prepared by Mr. Justice WHITFIELD and, observing that distinction, we may say that the Court had jurisdiction of the subject matter and of the parties in the foreclosure suit referred to, but the Court did not have power to enter a binding deficiency decree against a married woman not a free dealer.

It is contended that plaintiff, in a suit to quiet title, must deraign his title in the bill and prove it, as well as allege and prove possession.

The lot in question in Duval County was not claimed by anyone except plaintiff, and the bill of complaint contained sufficient allegations showing title in plaintiff. Even if the title to the land had been contested, it is only incumbent on the plaintiff to trace his title back to a common source, and that was done in the bill of complaint. Bayton v. Patton, 80 Fla. 763, 86 So. 702.

A grantee of land from one having outstanding against her a void judgment, may maintain a bill in equity to cancel a void judgment as a cloud upon its title to the land.

Where such a bill in equity may be maintained by the grantee of land, a counter claim by the grantor to have the

void judgment set aside, may likewise be maintained, particularly under circumstances such as exist in this case.

No error is made to appear either in the findings of fact of either the Special Master or the Chancellor, or in the final decree of the Chancellor, and the final decree is hereby affirmed.

Affirmed.

ELLIS, P. J., and TERRELL and BUFORD, J. J., concur.

WHITFIELD, C. J., and DAVIS, J., concur in the opinion and judgment.

BROWN, J., dissents.

## ON REHEARING.

PER CURIAM.—This cause coming on to be heard upon rehearing granted and had February 2, 1937, and the Court being now advised of its opinion to be given in the premises, it appears to the Court that this cause is distinguishable from the case of State, *ex rel.* Willys, v. Chillingworth, 124 Fla. 274, 168 Sou. Rep. 249, and kindred cases, in that where there has been an attempt, as there was shown in this case, to enforce a judgment at law rendered against a defendant married woman in a county outside of the jurisdiction where the judgment was rendered, by having a transcript of such judgment filed and recorded in another county where the defendant married woman's land lies, in order to create a statutory lien on such land (Section 4489 C. G. L., 2803 R. G. S.), in that county, a court of equity having jurisdiction where the land lies has authority to inquire into, and to decree the existence *vel non* of the lien purported to have been created by the recording of the foreign judgment in the county wherein the land lies upon which it is asserted to be a lien, and thereupon to make and enter an appropriate decree in the cause giving

effect to its determination as to whether or not the judgment so recorded can be enforced as a statutory lien against the property of the defendant married woman outside the county where the judgment was rendered, even though the judgment may be valid on its face and not subject to collateral attack or avoidance as such, except in directed proceedings instituted before the Court by which the judgment was rendered.

At common law, except for debts due the King, the lands of a debtor were not liable to the satisfaction of a judgment lien against him, and consequently a judgment did not operate as a lien on the real estate of the defendant. See Note Ann. Cas. 1912D 986. Therefore, judgment liens on lands are statutory liens and their existence depends upon the legal effect of the statute by virtue of which they are claimed.

Under Section 4489 C. G. L., 2803 R. G. S., a judgment lien on a defendant's real estate may be acquired and perfected by the filing and recording of a transcript of the judgment or decree against him in a county other than the one in which the judgment was rendered. Thus the lien is only acquired when a certified transcript of the foreign judgment has been recorded in the county in which the real estate so sought to be bound may be situated. But there is no authority under a proper application of Section 3389 C. G. L., *supra,* for making foreign judgments at law rendered in proceedings *ex contractu* against married women effectual as liens upon the lands of such married women outside the county of their rendition, by the mere filing and recording of a certified transcript of the judgment in another county than that in which the judgment was entered. So the question of whether or not a recorded certified transcript filed under the statute is in law a lien because of

the status of defendant as a married woman at the time of judgment and the nature of the cause of action as being one *ex contractu* upon which the judgment was rendered, is one for judicial inquiry in appropriate proceedings in equity brought in the county where the record exists to cancel the record as a cloud upon the defendant married woman's title when it has become nominally but unauthorizedly bound by the recorded transcript. Such was the real nature of the suit and major part of the decree involved in this case.

The decree of the Circuit Court is reversed on rehearing in so far as it undertakes to decree in paragraph 1 thereof that the principal judgment itself, as entered against the defendant, Alice L. Zapf, also known as Alice L. Bossert, in the Circuit Court of Dade County on September 17, 1921, was or is null, void and of no effect, but said decree is otherwise affirmed in so far as the record thereof in Duval County is decreed by it to be removed and annulled as a cloud on complainant's title in said county. The costs of this appeal should be taxed equally against the adversary parties to the appeal.

Reversed in part and affirmed in part on rehearing, with apportionment of costs.

ELLIS, C. J., and WHITFIELD, TERRELL, BUFORD and DAVIS, J. J., concur.

BROWN, J., dissents.