**MABEL KERIVAN, et al., v. ALBERT FOGAL, et al.**

22 So. (2nd) 584

June 19, 1945

June Term, 1945

Division B

*R. G. Tittsworth,* for appellants.

*B. L. Cooper* and *Rufus T. D. Cooper,* for appellee.

THOMAS, J.:

A most interesting state of facts appears in the record of this case, and about it there seems to be no dispute, the only difference between the parties being the principles of law appropriately to be applied.

A young woman, aged thirty, met in Tampa a man more than fifty years her senior and married him. A few days later he purchased a home which was conveyed to both, thus creating what would have been, in ordinary circumstances, an estate by the entirety. Within three months he died, but she continued to occupy the property for several months, then sold it for cash to purchasers who evidently took every precaution to determine from the record the true status of the title. After all this it developed that the ostensible widow, who had deeded the property, apparently hers on the death of her husband, had been, at all times relevant to this history, wed to another. To all appearances she and the intestate were man and wife, and during the short period between the marriage and his death they lived together on the property as if such relationship truly existed. It may be fair to comment here that in her testimony she explained her false position by saying that she thought her preceding husband had obtained a divorce. Evidently she had not taken the trouble to learn whether that was a fact before she remarried, accepted title to the property in question and conveyed it to the appellee-purchasers, although of course there was ample time and opportunity for her to inform herself on the matter.

Clearly the parties against whom relief is sought in this controversy were innocent purchasers from a bogus widow. Neither they nor their attorney had any knowledge whatever but that she was the survivor and could convey the whole

estate. Evidently the deceased had departed this life in total ignorance of his bride's deception.

Wishing to avoid any possibility of confusion, we remark here that only two deeds are involved in this controversy, namely, the one apparently creating the estate by the entirety and the one conveying the interest of the survivor to the appellee-purchasers.

It was prayed in the bill that the latter be declared void, not having been executed by the lawful husband of the perpetrator of the fraud; that the former be adjudged not to have established an estate by the entirety; that the heirs— they now stand in the place of their ancestor—be decreed to own an undivided half interest, inasmuch as a tenancy in common resulted from the first conveyance; that the other half be ordered conveyed to the appellants by the spurious widow and her then husband, she having obtained the property fraudulently; and that the present owners—appellees— be required to disgorge reasonable rental for the period they occupied the property.

No affirmative relief was sought in the answer.

Before proceeding to a discussion of the issues we emphasize that it is plain from the prayer of the bill that the appellants actually claim relief under the former deed and, claiming under it, recognize the instrument.

Obviously the widow, despite her insistence that at the time of the marriage to the intestate she thought she had been divorced from a previous husband, was guilty of fraud and did not become a tenant by the entirety. Doubtless the man who considered himself her husband could have eliminated any claim she made to the property had he detected her duplicity before he died. Presumably his heirs could pursue such a course had the second deed not been given and were the title now still in the names of the grantees in the first deed. It may well be that the second deed, dated 16 February 1938, from her to the appellee-purchasers were void, not having been executed by the then husband (Sections 693.01 and 708.04, Florida Statutes, 1941, and F.S.A.), but we cannot dispose of this case solely on that conclusion. See Phillips

v. Lowenstein, et al., 91 Fla. 89, 107 So. 350, cited by appellants.

It was decided in Cronell v. Ruff, 105 Fla. 504, 141 So. 535, that a contract to sell executed by a married woman who represented herself to be single was ineffective and could not be enforced, also in Protective Holding Corporation v. Cornwall Company, 127 Fla. 252, 173 So. 804, that a married woman could not invest herself with legal capacity to execute a mortgage. · In still another case, Wilkins v. Lewis, 78 Fla. 78, 82 So. 762, this Court dealt with a situation where a woman had given a mortgage describing herself as a widow although she was at the time married, and the court held the instrument void and her misrepresentation of celibacy ineffectual to bring into play the doctrine of estoppel.

Appellees, the purchasers, remind us that inasmuch as the appellants could have had no possible claim against them had the first transfer not been affected by bigamy, any claim they now assert must be based on the negligence, ignorance, or stupidity of their ancestor and not upon any condition chargeable to these appellees.

The reasoning of the appellants, that because the first deed created no estate by the entirety, but only one in common, and the second was void, not having been executed by the grantor's husband, they could claim one half as tenants in common and the other half because of the fraud, has the appearance of logic. To follow it, however, would bring us to a conclusion grating upon our sense of justice, and we think a contrary view is abundantly justified.

The chancellor invoked the principle that where one of two innocent persons must suffer—in this case an heir standing in the place of his ancestor or a purchaser of the property —the one who occasions the loss or makes it possible or could have prevented it must suffer. He thought the intestate was responsible for the situation which gave rise to this controversy, even though he acted in good faith, and that his carelessness or stupidity or whatever else caused him to marry without determining the eligibility of his prospective bride should not be visited upon the purchasers, who apparently made a search as thorough as could be expected of them to

learn whether the title was merchantable and the grantor had power to convey the whole estate.

We have seen that one may not resort to equitable estoppel to bolster a title which is faulty because of misstatement of the marital status of a woman. As a matter of fact, appellee-purchasers concede that they could not claim title under a void deed, but they insist that the court should invoke in their behalf the doctrine of estoppel when an assault is made upon their title. In support of their position they cite authority to the effect that equitable estoppel is not designed to aid a litigant in gaining something, but only in preventing a loss. In other words, it will not avail in offense but only in defense. Stone v. Culver, 286 Mich. 263, 282 N. W. 142. We consider this position sound. In his final decree Judge Sandler quoted from Stone v. Culver, supra, where it was said: "The purpose of the rule that title may not be created by estoppel is to prevent the uncertainty of titles which would arise if . . . parol evidence of an estoppel could be introduced to show that the paper title is not what it appears to be. The rule is not applicable . . . [where] the estoppel serves to defend and not to destroy the apparent paper title." See also Hawley v. Dibble, 184 Mich. 298, 151 N. W. 712.

Appellee-purchasers make the point, too, that the estoppel on which they lean is not primarily founded on the deed to them but upon the one which on its face created the estate by the entirety and that this instrument was valid even though it may have created, because of the woman's existing marriage, an estate in common. Unquestionably this is the deed under which the appellants are claiming, and they contend that because it created only a tenancy in common they are entitled to one-half as heirs of one of the grantees. Here again we agree with the view of the chancellor countenancing appellees' position. When appellants depend upon this deed they must confirm it—all of it. They cannot claim under such part of it as will benefit and repudiate such part as will injure. Jacobs v. Miller, 50 Mich. 119, 15 N. W. 42, and Hawley v. Dibble, supra. We have already stated that they stand in the precise position that the original grantee would

occupy were he now living. Unquestionably their predicament is traceable as well to their ancestor as to the woman he thought he lawfully married. On the face of the record the transfers to the appellees and to their predecessors in title are regular in all respects, and we think they may not be impeached by the heirs.

It is our view that equitable estoppel is properly available as a shield against the attack, and we hold the opinion too that in the circumstances of this record the appellants may not rely upon the deed to the extent of securing one half interest in the property and at the same time renounce the other half because the instrument was vitiated by fraud—a fraud which their ancestor, had he been diligent, could easily have discovered and averted. To take away from these appellee-purchasers the property which they bought in good faith and paid for when the record upon which they relied showed no irregularity whatever and their grantors had held themselves out as husband and wife, and to require them also to pay a rental value to the appellants would, in our opinion, work gross injustice. To leave them in the enjoyment of the property while the appellants search elsewhere for a remedy would, we think, do no violence whatever to established principles of law and would result in genuine justice.

We choose this latter viewpoint and affirm the conclusion of the chancellor.

Affirmed.

CHAPMAN, C. J., BROWN and SEBRING, JJ., concur.