565 So.2d 900 (1990)
PROFESSIONAL UNDERWRITERS INSURANCE COMPANY, Appellant,
v.
FREYTES & SONS CORPORATION, INC., Etc., et al., Appellees.
No. 89-1730.
District Court of Appeal of Florida, Fifth District.
August 23, 1990.
Michael K. McLemore and Joseph T. Kissane of Kimbrell & Hamann, P.A., Miami, for appellant.
Raymond F. Brady of Rodney D. McGalliard, P.A., Gainesville, for appellee Kathryn Wike.
*901 GRIFFIN, Judge.
In 1987, the Freytes and Sons Corporation, Inc., which operates a convenience store in Ocala known as "Freytes Deli and Grocery", was sued based on allegations that in March of 1986 it willfully sold beer to a minor resulting in the minor's death from a self-inflicted gunshot wound. Insurance coverage for this claim was the issue below.
Castulo Freytes, President and director of Freytes and Sons Corporation, Inc. (the "insured"), had purchased the convenience store after retiring as a truck driver in Puerto Rico. He had never owned a business before. Freytes met John Gerena, the part-owner of an insurance agency, Nationwide Financial Consultants d/b/a Gerena Insurance Agency, at church where the two men often socialized after services. On one occasion Freytes complained to Gerena that lawyers wanted to charge him too much to incorporate his business so Gerena offered to do the incorporation for him. Freytes later contacted Gerena to procure insurance for the business.
Freytes and Gerena met one evening at Freytes' home at which time Freytes agreed to purchase business liability insurance (a special multi-peril policy written by appellant) through the Gerena Agency. Freytes testified that, because he did not know about insurance, Gerena was supposed to explain what coverage he needed. Freytes also testified that he asked Gerena about at least two coverage issues: fire coverage for the gas pumps (Gerena told him it was a separate policy, too expensive, Freytes lacked the necessary security extinguishers, it wasn't worth it for the size of the business) and accident insurance for family members working in the business. Freytes testified that he also told Gerena during that meeting that he would like to take the tobacco and the alcohol out of the store.[1] Freytes acknowledges he never asked Gerena about the need for liquor liability coverage. Gerena said that he did not discuss it with Freytes because Freytes did not ask for it. There is no testimony that Freytes ever requested anything in the nature of "full coverage." When Freytes was asked at trial whether Gerena told him that the business was "fully covered," he testified that Gerena told him "that was what he needed... ."
Freytes testified that, after the meeting with Gerena, he did some calculations that convinced him that removing alcohol and tobacco from the store would not be profitable so he continued to sell it.
In addition to the factual matters stated above, it was undisputed in the record that the appellant insurance company does not write liquor liability coverage and that Mr. Gerena's agency would have had to try to obtain that coverage for the insured through another company.[2]
The trial court ruled that the Gerena Insurance Agency was appellant's agent, that it was negligent in failing to properly advise Freytes as to insurance coverage, that it negligently failed to procure the appropriate coverage for Freytes Deli's clearly warranted needs, and that Freytes Deli reasonably relied upon the assurances of appellant's agents that the subject policy provided full coverage.[3] Based on the foregoing, the trial court held that the appellant insurance company was estopped from relying on the exclusion contained in the *902 policy relating to injuries arising from the sale of alcoholic beverages.
The question thus presented is whether, under the above facts, the appellant insurer, which issued the special multi-peril policy to Freytes Deli, is estopped to rely on the following provision contained in its policy:
This insurance does not apply:
* * * * * *
(h) to bodily injury or property damage for which the insured or his indemnitee may be held liable
(1) as a person or organization engaged in the business of manufacturing, distributing, selling or serving alcoholic beverages, or
(2) if not so engaged, as an owner or lessor of premises used for such purposes, if such liability is imposed
(i) by, or because of the violation of, any statute, ordinance or regulation pertaining to the sale, gift, distribution or use of any alcoholic beverage, ... .[4]
The effect of the lower court's ruling is that an insurer that does not write liquor liability insurance has been held to provide unrestricted liquor liability coverage to an insured that has undergone no underwriting evaluation nor ever paid a nickel in premium for the coverage.
This creation of insurance coverage by estoppel is simply not available to the insured or to the estate of the deceased claimant under the facts of the present case. The decision of the Florida Supreme Court in the case of Crown Life Insurance Company v. McBride, 517 So.2d 660 (Fla. 1987) is controlling. In Crown the court reiterated that:
The general rule in applying equitable estoppel to insurance contracts provides that estoppel may be used defensively to prevent a forfeiture of insurance coverage, but not affirmatively to create or extend coverage. Six L's Packing Co. v. Florida Farm Bureau Mutual Insurance Co., 268 So.2d 560 (Fla. 4th DCA 1972), cert. discharged, 276 So.2d 37 (Fla. 1973). "[E]quitable estoppel is not designed to aid a litigant in gaining something but only in preventing a loss. In other words, it will not avail in offense, but only in defense." Kerivan v. Fogal, 156 Fla. 92, 96, 22 So.2d 584, 586 (1945).
Id. at 661. The supreme court went on to create a "very narrow exception" to this general rule by holding that "the doctrine of promissory estoppel may be utilized to create insurance coverage where to refuse to do so would sanction fraud or other injustice." AIU Ins. Co. v. Block Marina Inv., Inc., 544 So.2d 998, 1000 n. 1 (Fla. 1989). The court also emphasized that such creation of coverage by promissory estoppel had to be proved by clear and convincing evidence.
In the Crown case, the court was presented with testimony of a plaintiff who, upon obtaining new employment, made specific inquiry of his new employer's group health insurance provider as to whether his son, who suffered from a genetic premature aging disease, would be covered under the policy. The father testified that, based upon the insurer's representations in response to his inquiry that his son's illness would be covered, he elected insurance under his new employer's policy and allowed the conversion option on his prior insurance coverage to lapse. When the new insurer refused to pay the son's medical expenses, the father sued, contending that the insurer was estopped to deny him coverage. Although the supreme court recognized that, in principle, creation of coverage could be possible under a theory of promissory estoppel, the court also found that the plaintiff father had failed to meet the clear and convincing evidentiary burden required to establish such an estoppel. 517 So.2d at 662. Specifically, the court found that the plaintiff had failed to meet the burden of proving detrimental reliance upon the insurer's representation because he failed to offer any proof other than his own testimony that he did, indeed, have the option to convert his other insurance *903 and because he failed to identify exactly what benefits would be provided under the conversion coverage. The court concluded by finding that the plaintiff "did not prove that the lapsing of the prior coverage was to his detriment or that the refusal to enforce the alleged promise would sanction the perpetration of a fraud." Id.
Here, the threshold element of a promise or representation concerning liquor liability coverage is missing. The only "representation" the insured testified to was that the insured had "what it needed" but such a statement does not rise to the level of specificity required to be a "representation" of liquor liability coverage. Cf. W.R. Grace and Co. v. Geodata Services, Inc., 547 So.2d 919, 924 (Fla. 1989). There is also no evidence that Freytes understood the statement that he "had what he needed" to mean he had liquor liability coverage. At most, this statement is an expression of opinion that the insured's expressed or understood needs had been met. Such a statement cannot reasonably be interpreted by an insured to mean that he has just purchased insurance that covers any conceivable claim or contingency he may encounter. Freytes' own testimony reveals he knew that much. Every policy has limitations and exclusions; this one had a total of eighteen under the general liability portion of the policy.
It may be true that this insured did not know much about commercial insurance, but he did have an obligation to know about his business, including the liabilities that might arise from its operation, and take reasonable steps to insure himself. In Crown, the plaintiff made a specific inquiry regarding a specific coverage issue and received an erroneous response upon which he relied. Here, the insured never made any such inquiry.
This case also lacks, as did Crown, the requisite proof of detrimental reliance. Mr. Freytes only testified that "of course" if he had known that the insurance he purchased did not cover alcohol related injuries, he "would have wanted such a policy... ." There was no testimony, however, that any liquor liability coverage was actually available to this insured, no testimony that such insurance would have covered the "willful sale" allegations in the underlying lawsuit, and no testimony that Freytes could have or would have purchased coverage at whatever premium would have been charged. What occurred here does not estop the insurer from relying on the exclusions in its policy. To hold otherwise would be to declare that the rule that coverage is not created by estoppel, recognized by the supreme court in Crown, has been obliterated by its very narrow "exception".
REVERSED.
COWART, J. and ORFINGER, M., Associate Judge, concur.
NOTES
[1] Freytes explained that his reason for making the statement was that his minister was visiting at his home that evening and their religion proscribed the use of alcohol or tobacco. He testified that he made a statement that he wanted to take the alcohol out of the store because he felt like a "little bit of a hypocrite or something for claiming his religion and selling alcohol and tobacco on the side." Mr. Gerena remembered the statement about removal of the alcohol having been made by Mr. Freytes but could not recall when it was made.
[2] Appellee argues that Gerena's motivation for not discussing liquor liability coverage with Freytes was that the premium on the special multi-peril policy was close to 20% whereas the coverage on the liquor liability policy was only 10%. The problem with this argument is that the coverages were not alternative; liquor liability coverage would have been supplemental, if available, and would presumably have generated additional premium to the agent.
[3] Because we find that coverage was not created in the present case, we do not address the other findings of the trial court challenged on appeal.
[4] Although disputed, at trial the court found as fact that the insured did not receive a copy of the policy from the agent until after the suit was filed.